# CASES DETERMINED

AT THE

## January Term, 1891.

Trevitt, Respondent, vs. Heinemann, Appellant.

*May 5 — June 3, 1891.*

*Suretyship: Bond to pay judgment against other persons: Liens on logs and lumber.*

Pending an action to enforce a lien on lumber for the sawing thereof, and in consideration of a release of the lien, one of the defendants, who held the lumber as security for a debt due to him from the owner thereof, gave to the plaintiff a bond for the payment of any judgment which the latter might recover. The plaintiff recovered a personal judgment against certain of the defendants for whom he had sawed the lumber but who had no beneficial interest therein. *Held,* that the liability of the giver of the bond was not merely that of a surety for the defendants against whom the judgment was recovered; and that, the value of the lumber received by him being sufficient to pay the debt due to him from the owner and also the saw bill for which the judgment was recovered, it was proper that such bill should be paid by him out of the proceeds of such lumber.

APPEAL from the Circuit Court for *Marathon* County. Action upon a bond. In 1888 one Stevens, who was operating a saw-mill in Marathon county, sawed certain logs into lumber for the firm of Parcher, J. & A. Stewart & Co., the firm consisting of four members. The logs belonged to one Callon, who was liable to the firm for the sawing thereof, but was not personally liable therefor to Stevens. Callon executed a bill of sale of the logs and lumber cut therefrom to *Benjamin Heinemann,* the defendant,

1

as security for a debt he owed the latter of between $300 and $500. There was over 130,000 feet of the lumber, worth $10 per M. feet. The bill for sawing remaining unpaid, Stevens commenced an action in the circuit court to enforce a lien therefor on such lumber, making the four members of the Parcher-Stewart firm, Callon and wife, and *Heinemann*, defendants thereto. Personal claim was made against the firm only. Callon alone interposed a defense to the action.

While the lien action was pending, in consideration that the lien should be released and the lumber delivered to *Heinemann*, the latter executed a bond to Stevens, conditioned for the payment by him to Stevens of all sums which he might recover in his action against the defendants therein or any of them. Thereupon Stevens abandoned his lien proceedings, delivered the lumber to *Heinemann*, dismissed the action as against Callon, and took a personal judgment by default against the members of the Parcher-Stewart firm for $378.54 damages, and $58.54 costs.

Afterwards Stevens assigned his judgment and the bond of *Heinemann* to *Maggie T. Trevitt*, the plaintiff, who brought this action against *Heinemann* on such bond. The defendant interposed a counterclaim to the action, alleging that by the mistake and inadvertence of the attorney who drew the bond the same was not drawn to express the real agreement under which it was given, in that the agreement was that the defendant was only to be held liable to pay the judgment in the lien suit in case Stevens prosecuted the same against all the defendants therein, and established in such suit his right to the lien claimed. A reformation of the bond was demanded, so that it should express the actual agreement of the parties.

The cause was tried by the court without a jury. The findings of fact and conclusions of law are in favor of the plaintiff, and pursuant thereto judgment was entered for

the plaintiff for the amount of the judgment in the lien suit and the costs of this action. The defendant appeals from the judgment.

For the appellant there was a brief signed by *Neal Brown* and *L. A. Pradt*, and oral argument by *Mr. Brown.*

For the respondent there was a brief by *Bardeen, Mylrea & Marchetti*, and oral argument by *C. V. Bardeen.*

Lyon, J. 1. The learned circuit judge held that the allegations of the counterclaim for a reformation of the bond in suit were not proven. We think he held correctly. The averments in this behalf are, in substance, that the agreement pursuant to which the bond was executed was that the lien action should proceed against all the defendants therein, and that it should be ascertained and adjudicated therein whether Stevens was entitled to a lien on the lumber in question, and, if found not so entitled, the defendant should not be liable to pay any mere personal judgment which might be recovered; that those stipulations were omitted by the mistake or inadvertence of the attorney who drew the instrument; that the defendant signed the bond without reading it or knowing its contents, supposing it contained the whole agreement; and that he would not have signed it had he known that such stipulations were omitted therefrom. But the defendant admitted in his testimony, on cross-examination, that he could read the English language, and that he read the bond before he signed it. Moreover, the testimony is very satisfactory that the bond expresses the real agreement of the parties, and the whole of it.

2. It is alleged in the answer that Stevens was paid for sawing the logs in question, and that the judgment in the lien suit has been kept open and unsatisfied of record pursuant to a collusive and fraudulent agreement between him and the Parcher-Stewart firm, for the purpose of defraud-

Trevitt vs. Heinemann.

ing the defendant. The assignment of the bond to plaintiff is also alleged to be merely colorable and fraudulent. It is sufficient to say that we find no evidence establishing either of these allegations or any fraud in the case.

3. The defendant alleges in his answer that the Parcher-Stewart firm is pecuniarily responsible (which is admitted by plaintiff); that he had requested Stevens to proceed to collect the judgment in the lien suit of the firm; that defendant offered to pay Stevens such judgment if the latter would assign the same to him; that he also offered to collect such judgment of the firm, without expense to Stevens, if permitted to do so; and that Stevens refused to comply with such request or to accept either of said offers. The defendant offered testimony to prove such allegations, but the court sustained objections thereto, and rejected the testimony.

We understand the above testimony was offered on the theory that defendant stood in the relation of a surety of the Parcher-Stewart firm for the payment of Stevens' claim· for sawing the logs in question, and hence that he was entitled to diligence on the part of Stevens to collect the judgment of that firm, or at least to have an assignment of such judgment if he paid it to Stevens.

. Other rulings assigned for error are attacked on the same theory. For example, the assignment of the judgment by Stevens to plaintiff contains a stipulation that no proceedings shall be taken for the collection thereof if the bond in suit should be collected of defendant. It is claimed that this postpones collection of the judgment without consent of defendant, and if, as claimed, he is surety for the judgment debtors, releases him from the obligation to pay it. Indeed, if we correctly understand the argument of the learned counsel for defendant, every material ground urged by him for a reversal of the judgment, which has not already been specially mentioned, goes upon the hypothe-

sis that the defendant is merely a surety for the Parcher-Stewart firm. If such relation of principal and surety does not exist between them, it does not seem to be denied that none of the alleged errors of the class under consideration are well assigned. Hence the question of the accuracy of such hypothesis, which we are now to consider, is an important, and to the extent indicated a controlling, one in the determination of this appeal.

Although the Parcher-Stewart firm made itself absolutely liable to Stevens, as principal debtor, to pay for sawing Callon's logs, yet that firm has no interest in the logs or the lumber cut therefrom. The whole beneficial interest therein was in Callon, who owned the logs and lumber subject to defendant's lien thereon, and in the defendant by virtue of such lien, which he held as security for Callon's indebtedness to him. If, therefore, the relation of principal and surety exists between any of the persons named, the Parcher-Stewart firm is the surety for Callon and defendant, for whose benefit alone Stevens sawed the logs. In no correct sense can it be said, we think, that by executing the bond in suit the defendant made himself the surety of the firm for the payment of Stevens' sawing bill and the judgment he obtained therefor.

The lumber was the primary fund out of which Stevens' bill for sawing it should be paid, and notwithstanding the personal liability of the firm therefor it was competent for Stevens to resort to such fund and enforce payment out of it, instead of compelling payment by the firm. Stevens commenced an appropriate action to get his money out of such primary fund, to wit, the lumber, when the defendant, who held the same as security for Callon's indebtedness to him, gave the bond in suit, and thereby obtained the lumber discharged of the lien attachment. It is undisputed that the value of the lumber was sufficient to pay Callon's debt, together with the judgment against defendant in this

action, and to leave quite a large surplus for Callon. Under these circumstances, it seems reasonable and just that the saw bill should not be collected of the Parcher-Stewart firm, but should be paid out of the proceeds of the lumber in defendant's hands. The judgment in this action accomplishes that result.

*By the Court.*— The judgment of the circuit court is affirmed.