## ST. CHARLES SAVINGS BANK v. EDWIN B. DENKER et al., Appellants.

### Division Two, July 30, 1918.

1. **DEPOSITION: Admission: By Agent of Party.** In order that the declarations of an agent may bind his principal as an admission the declarations must have been made during the continuance of the agency and in regard to the transaction then depending; if they were not contemporaneous with the transaction and illustrative of its character, but merely a subsequent narrative of how it occurred, they are not admissible in evidence against the principal. So that where defendants were sued on a cashier's bond for defalcations occurring prior to his discharge in 1904, statements made by the president of the bank in a deposition taken in 1906 are not admissible as admissions against the bank in its suit on the bond.

2. ————: **Incomplete: Deprived of Right of Cross-Examination: Death of Deponent.** Where the taking of the deposition by defendants was not completed, but before the witness's examination in chief was concluded an adjournment was had at the request of defendants and with the consent of the parties, and it does not appear that

the deposition was not completed on account of deponent's sickness, or that defendants made any effort thereafter to continue the taking of the deposition, or that the illness of deponent was so serious that the deposition could not have been finshed at some time during the three months that he continued to live, the deposition cannot as such be admitted in evidence over the objection of plaintiff that he was deprived of the right of cross-examination.

3. **EVIDENCE: Same Rules in Law and Equity.** The general rules of evidence in courts of law and in courts of equity are the same, and there seems to be no reason under the code of procedure for applying different rules to the admissibility of testimony.

4. ———: **Errors of Trial Court: Attack by Respondent.** Respondent on appeal may attack erroneous rulings of the trial court for the purpose of sustaining his judgment. He may point out errors committed against him in order to sustain a judgment in his favor. Where plaintiff objected to the admission in evidence of a deposition, and was overruled by the referee, who nevertheless made findings in his favor, with which he was satisfied and which were approved by the trial court and judgment was rendered in his favor, he has the right on defendant's appeal, in an effort to sustain his judgment, to object to the competency of the deposition, and ask the court to exclude it from consideration, because it was erroneously admitted in evidence by the referee.

5. ———: **Suit on Bond: Admission of Principal: Binding on Sureties: Res Gestae.** An admission of the principal in an employee's bond, with respect to matters pertaining to the performance of his guaranteed duties, made while he is engaged in their discharge, is always competent evidence against the surety in the trial of a suit on the bond. And the words "while engaged in the discharge of his duties" mean that any statement made by the principal during the continuance of the term for which the sureties are bound, concerning any transaction during that term, is admissible against the sureties. So that where an investigation of the cashier's shortage was begun on the fifth of the month and the directors instructed him to make no further entries on the books, and other persons were put in charge of them, although he continued in and around the bank until his discharge on the ninth, a written statement explaining the discrepancies and his false entries made to a director and signed by him on the seventh, was competent evidence against the sureties on a bond which covered the period and made them liable for any loss occasioned by his act.

6. **CASHIER'S BOND: Directors' Knowledge of Dishonesty: Concealment: Neglect: Liability of Sureties.** If the officers and directors of the bank had knowledge of the cashier's dishonesty and accepted the bond with such knowledge, without disclosing to his sureties what they knew of his character, the sureties are not liable. But

if they were only careless and negligent in failing to ascertain his character, the sureties are liable.

7. ————: Evidence Not Preserved: Reference Case. If the evidence in regard to an item allowed by the referee in a compulsory reference case of which appellants complain is not preserved in the abstract, the appellate court will not review the matter.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

AFFIRMED.

*B. H. Dyer* and *Jones, Hocker, Sullivan & Angert* for appellants.

(1) The deposition of Bruere was properly admissible in evidence. (a) As a deposition, notwithstanding the lack of cross-examination and signature. Scott v. McCann, 76 Md. 47; Fuller v. Price, 4 Gray (Mass.) 343. (b) As the properly proven testimony of the witness concerning the litigation. 16 Cyc. 1099. (c) As the declarations of the bank by its president against interest. Malack v. Railway Co., 57 Mo. 21; Roberts v. Railway Co., 153 Mo. App. 695. (d) No exceptions having been filed by respondent to the ruling of the referee in admitting the same, the question cannot be re-examined. R. S. 1909, sec. 2012; Berry v. Rood, 209 Mo. 673; Anderson v. Caldwell, 242 Mo. 206; Buxton v. Debrecht, 95 Mo. App. 604. (2) The obligation of the appellant sureties on the bond in suit was procured by respondent by fraudulent concealment of prior misconduct of the cashier and is thereby avoided. Third National Bank v. Owen, 101 Mo. 580; Harrison v. Insurance Co., 8 Mo. App. 41. (3) The so-called Mispagel "confession" was inadmissible against the appellant sureties, and constituted, confessedly, the only evidence upon which to base a judgment against the appellant sureties on the Baird drafts, or any of them. State to use v. Bird, 22 Mo. 474; Father Matthew Society v. Fitzwilliam, 12 Mo. App. 449,

275 Mo.—39

84 Mo. 406; Stetson v. Bank of New Orleans, 2 Ohio St. 167; White v. German National Bank, 9 Heisk (56 Tenn.) 475; Knott v. Peterson, 125 Iowa, 404; Weider v. Surety Co., 86 N. Y. Supp. 105; Lee v. Brown, 21 Kan. 458; Hatch v. Elkins, 65 N. Y. 499; Underhill on Evidence, sec. 73; Cook Co. Liquor Co. v. Brown, 122 Pac. (Ok.) 168; Blair v. Ins. Co., 10 Mo. 567.

*Charles W. Bates, Theodore C. Bruere, David Barron* and *C. W. Wilson* for respondent.

(1) The statement or so-called deposition of Theodore Bruere, Sr., was improperly admitted, and should not be considered by the court. R. S. 1909, sec. 1996; State ex rel. v. Ice Co., 246 Mo. 202; Reed v. Young, 248 Mo. 612; Dannerfelser v. Weigel, 27 Mo. 45; Attwell v. Lynch, 39 Mo. 519; Chamberlayne on Evidence, sec. 2713; Pringle v. Pringle, 59 Pa. St. 281; State v. Grant, 79 Mo. 137; People v. Cole, 43 N. Y. 508; Sperry v. Moore's Estate, 42 Mich. 353; Bangs Milling Co. v. Burns, 152 Mo. 380; Byrne v. Feed Co., 143 Mo. App. 85; Vohs v. Shorthill, 124 Iowa, 471; Goetz v. Bank of Kansas City, 119 U. S. 557; Rogers v. McCune, 19 Mo. 569; Calson v. Ebert, 52 Mo. 270; King v. Insurance Co., 101 Mo. App. 172; McDermott v. Railway, 73 Mo. 518-519; Scovell v. Clasner, 79 Mo. 455-456; Redmond v. Railroad, 185 Mo. 12. (2) There was no fraudulent concealment of any facts from the sureties, and they are not discharged from liability on the bond in suit. Hartford Ins. Co. v. Casey, 191 S. W. 1072; State to Use v. Atherton, 40 Mo. 218; Third National Bank v. Owen, 101 Mo. 558; Harrison v. Ins. Co., 8 Mo. App. 37; Farmers Bank v. Ogden, 192 Mo. App. 243; Bostwick v. Van Voorhis, 91 N. Y. 353; Atlas Bank v. Brownell, 9 R. I., 173; Hebert v. Lee, 12 L. R. A. (N. S.) 247 (Tenn.); Palatine Ins. Co. v. Crittenden, 18 Mont. 413; Wright v. Brewing Co., 103 Md. 377; Ida Co. Sav. Bk. v. Seidensteiner, 92 N. W. 862; Magee v. Manhattan Life Ins. Co., 92 U. S. 99; Chew v. Ellingwood, 86 Mo. 271; Lake v. Thomas, 84 Md. 608; Home

Ins. Co. v. Holway, 55 Iowa, 571; Roper v. Trustees, 91 Ill. 518; Watertown Sav. Bank v. Mattoon, 78 Conn. 338; Railroad Co. v. Schafer, 59 Pa. St. 357; Aetna Ins. Co. v. Mabbett, 18 Wis. 667; Screwmans Ben. Assn. v: Smith, 70 Tex. 168; Charlotte Railroad v. Gow, 59 Ga. 685. (3) The true rule to apply in this case is the rule which applies in cases where the Government is obligee in the bond. Watertown Sav. Bk. v. Mattoon, 78 Conn. 338; Chew v. Ellingwood, 86 Mo. 260; State to use v. Atherton, 40 Mo. 216; Railroad v. Schafer, 59 Pa. St. 357; Lake v. Thomas, 89 Md. 608; R. S. 1909, sec. 1112. (4) The Mispagel statement was properly received in evidence. Savings Assn. v. Edwards, 47 Mo. 449; Bricer v. Stone, 47 Mo. App. 535; Benevolent Society v. Fitzwilliams, 12 Mo. App. 448; Benevolent Society v. Fitzwilliams, 84 Mo. 406; Singer Mfg. Co. v. Reynolds, 168 Mass. 591.

WHITE, C.—The plaintiff bank brought this suit against the defendants as sureties on the bond of A. F. Mispagel, plaintiff's cashier. The petition, after alleging the employment of Mispagel as cashier and setting out the undertaking, alleged that Mispagel had misappropriated and neglected to account for large sums of money, amounting to $36.275.05; and that at divers times during the period covered by the bond said Mispagel had made false entries in the books of the plaintiff bank for the purpose of concealing the misappropriations—entries which indicated money received by plaintiff bank which was never received, and entries showing money paid out which never was paid out—and also that he had failed to enter upon the books of the bank large sums of money that were received and paid out by the bank. A detailed, itemized statement of the several sums lost to the bank by reason of the misconduct of Mispagel is set forth in the petition.

The bond on which the suit was brought was in the sum of fifty thousand dollars, and conditioned that Mispagel should well and faithfully perform all the duties of such cashier, either under his present appoint-

ment or under any further appointment, and that the said securities would hold the bank harmless for any loss occasioned by any act of said cashier, either under his present appointment or any further appointment, until all his accounts with said bank had been fully settled and satisfied, and all money, funds and valuables belonging to said bank delivered by him, on proper demand, to the said board of directors of said bank, or the person authorized to receive the same.

Mispagel was first employed by the bank on February 17, 1890, and reappointed annually in January of each year until his final appointment January 2, 1904. During that period he gave three bonds, one executed when he was first appointed, his second one in January, 1898, and the third one, on which this suit was brought, January 2, 1904. He was discharged on the ninth of November, 1904, and the suit is for alleged defalcations which occurred during the period of his last appointment and the life of the last-mentioned bond. It appears from the record that suits had been brought on the two previous bonds for alleged shortages in Mispagel's accounts which occurred during the periods prior to the giving of the last-mentioned bond, involving sums aggregating $90,000. The present suit is on account of losses represented by twelve items amounting to $36,275.05, due to alleged misconduct of Mispagel during the life of the last bond.

The case was referred on motion and a compulsory reference was had.

The answer sets up a number of defenses, all of which are treated and disposed of by the referee, but those pressed upon our attention here are as follows:

A general denial, under which it is claimed that the proof does not sufficiently show the losses sued for occurred during the life of the bond sued on;

Allegations that Mispagel had acted as cashier of the bank for many years prior to the execution of the bond sued on, and had been guilty of misconduct amounting to violations of the law and causing losses to the bank, which misconduct was known to plaintiff and

unknown to defendants; that plaintiff took the bond without communicating to defendants such knowledge, and that this concealment of the plaintiff's knowledge of the character and conduct of Mispagel was a fraud upon these defendants and releases them from their liability upon the bond;

Attacks upon the separate items of the statement in the plaintiff's petition, and averment that the false entries in connection with each item showed that they were made in an effort to cover up defalcations which occurred prior to the execution of the bond sued on.

The referee took the evidence and filed his report, in which he found that during the period of each of the preceding bonds given by Mispagel the funds of the bank were taken by him, or by others with his consent; that he made fictitious entries in the books to conceal and cover up such shortages; that he still concealed and carried forward the shortages which had originated during all the period of his three bonds, by means of false entries in the books of the bank made during the period of this last bond. But after a careful examination of all the evidence adduced, the referee satisfied himself that he had eliminated from consideration all such items. He found against the plaintiff as to seven of the twelve items sued on, and found in favor of the plaintiff upon five, as follows:

Interest item ................ ...........$ 502.12
Draft No. 106420 ...................3,000.00
Draft No. 106503 ................... 800.00
Raised note .........................135.47
Third National Bank transaction ....18,596.10
                    Total ..........$23,035.69

The defendants filed exceptions to this report, alleging various errors on the part of the referee in his findings of fact, admission and rejection of evidence, and conclusions of law, which exceptions were by the circuit court overruled, and judgment was entered by said court in accordance with the report of said referee for $50,000, the amount of the bond, and the damages

assessed at $23,035.69. From this judgment defendant appealed.

I.   It is necessary to consider first the admissibility of certain items of evidence.

The so-called deposition of Theodore Bruere, Sr., is in the record and admitted in evidence over the objection of the respondent, which now claims **Admissions of Agent.** it should not be considered by this court as evidence in the case. Several perplexing questions arise in determining that issue:

Theodore C. Bruere, Sr., was president of the plaintiff bank in 1906, and had been for several years. On the tenth of March, 1906, pursuant to due notice, the defendant proceeded to take his deposition. An admission appears in the record to the effect that both parties were represented and it was agreed between them that the deposition might be taken in shorthand and afterwards transcribed and submitted to the witnesses for signature, "subject to the statutory allowance as to the admissibility thereof; and it is further admitted that the witness, Mr. Bruere, was sworn and in answer to the questions hereinafter set forth gave the answers hereinafter set forth; that the taking of the deposition was not completed on account of the sickness of Theodore Bruere, Sr., on March 10, 1906."

It was further stipulated that the taking of the deposition was, "at the request of the defendant, and with the consent of the parties, adjourned, and the taking of this deposition was not thereafter resumed on account of the death of Mr. Theodore Bruere, Sr."

It was also stipulated that the stenographer who took the testimony in shorthand would testify if present "that the questions and answers contained in said deposition hereinafter offered, marked 'Exhibit ——' correctly represents the questions that were propounded and the answers that were made by Mr. Bruere on the day of taking said deposition."

The certificate of the notary attached to the deposition bears date of the 22nd day of May, 1909, more than

three years after the testimony was taken. This certificate recites the stipulation mentioned, the notice, that Bruere was sworn by the notary to testify, and that before his examination the notary "was excused from further attendance at the taking of the deposition by consent of both parties, and that the forgoing was presented to me by the stenographer who reduced the testimony of said witness to writing, as a correct statement of the questions propounded to and the answers given by him; that before the foregoing testimony was signed by said witness the said witness became sick, and the notary was unable to obtain his signature, and the said witness subsequently died without having signed said deposition."

When this document was offered in evidence the defendant objected to its admission, and the referee rejected it as a deposition, but received it in evidence as containing admissions made by an officer of the bank against the interests of the bank.

The appellants now claim that the deposition properly was received in evidence on that theory, but content themselves with the statement made by the referee of his reasons for admitting it on that ground, and cite two cases in support of that position: Roberts v. Railroad, 153 Mo. App. l. c. 644; Malecek v. Tower Grove Railroad Co., 57 Mo. l. c. 21.

The rule relating to the admission of the declarations of an agent is that in order to bind the principal the declaration must have been made during the continuance of the agency in regard to the transaction then depending. If the statements of the agent were not contemporaneous with the transaction and illustrative of its character, but merely a subsequent narrative of how it occurred, it is inadmissible. [Redmon v. Railroad, 185 Mo. l. c. 12; McDermott v. Railroad, 73 Mo. l. c. 518-19; Scovill v. Glasner, 79 Mo. l. c. 455-6; Bangs Mllg. Co. v. Burns, 152 Mo. l. c. 380-1.]

We do not understand that the cases cited by the referee in support of his position indicate a contrary rule. Each seems to turn upon the contruction of the

facts in the particular case. In this case, the testimony of Bruere set out in the document offered as his deposition related to transactions which occurred years before. At the time his statement was taken he was not acting for his bank, although president and a director of it, nor transacting the particular business referred to in the statement, nor any business of the bank. On the contrary, his statement was taken under the constraint of process and at the instance of the defendants. It was therefore incompetent as an admission of the plaintiff bank and was erroneously admitted in evidence on that ground.

II.    Appellants, however, contend that it was admissible as a deposition, that this court should consider it as a part of the record as a deposition, and that the theory upon which it was admitted is immaterial.

**Deposition.**

Several objections are urged by respondent to the competency of this deposition, the principal one of which—and the only one necessary to consider—is that the deposition was incomplete and the plaintiff deprived of its right to cross-examine the witness.

The general rule is that where a party is deprived of the benefit of cross-examining a witness, by the act or neglect of the opposite party, or by the misconduct of the witness, the testimony of such witness cannot be read in evidence. [Sturm v. Atl. Mut. Ins. Co., 63 N. Y. l. c. 87; Kissam v. Forrest, 25 Wend. 651; Forrest v. Kissam, 7 Hill, 463; Gallagher v. Gallagher, 87 N. Y. Supp. 343; Matthews v. Matthews, 6 N. Y. Supp. 589; Dannefelser v. Weigel, 27 Mo. 45, l. c. 47; Celluloid Mfg. Co. v. Arlington Mfg. Co., 47 Fed. 4.] It is suggested in some of the books that rulings in some cases in chancery would conflict with this general principle of evidence, but this suggestion is qualified by the further statement that such cases depend upon their own peculiar circumstances.

The general rules of evidence in courts of law and courts of equity are the same, and there seems to be no

reason under our code of procedure for applying different rules to the admissibility of testimony, considering this an equity case on account of it being a compulsory reference.

The appellants cite only two cases in support of their position. In the first of these, a chancery case, Scott v. McCann, Admr., 76 Md. 47, the opinion contains this statement (l. c. 51): "It seems to be admissible in equity cases to receive the testimony of a witness whose cross-examination has been prevented, or cut off by death, where such cross-examination has not in any way been prevented by the fault of the party producing the witness, or of the witness himself."

The court then points out that a strong reason for receiving testimony in that particular case was because the plaintiff had already testified, and the defendant, after testifying in chief, died before his cross-examination. If his testimony in chief were not admitted the plaintiff would have an unfair advantage, unless the testimony of the plaintiff were stricken out in accordance with the purpose of the statute, which seeks to put parties upon an equality by excluding the testimony of the survivor, where one is dead. The court solved the matter by permitting the incomplete testimony of defendant to be introduced. The opinion distinctly says that the completion of the defendant's testimony was prevented by the act of God, so the defendant himself was in no way to blame for the failure to have his cross-examination taken.

The other case cited by appellant, Fuller v. Rice, 4 Gray, 343, is where it seems the testimony was substantially complete. The cross-examination was begun, but not finished, and the court held the deposition admissible.

In the case of Kissam v. Forrest, supra, it was held an incomplete deposition was inadmissible, but the case was appealed and reversed, and under the title of Forrest v. Kissam reported in 7 Hill, 463. In reversing it, after holding that the incomplete deposition was admissible, the court said: "I admit the rule should be

otherwise where the right to cross-examine the witness has been lost by the fault or neglect of the party calling him.''

In the case of Sturm v. Insurance Co., supra, the New York Court of Appeals announced the rule thus: ''It may be taken as the rule, that where a party is deprived of the benefit of the cross-examination of a witness, by the act of the opposite party, or by the refusal to testify or other misconduct of the witness, or by any means, other than the act of God, the act of the party himself, or some cause to which he assented, that the testimony given on the examination in chief may not be read.''

In the case of Gallagher v. Gallagher, supra, the witness on cross-examination refused to answer, and the court declined to compel him to answer. On appeal it was held the testimony of the witness should be stricken out. The court said (87 N. Y. Supp. l. c. 344):

''The defendant insists that he should not suffer because the court refused to compel his witness to answer, for he was willing that he should, and that the court should compel him to. But a party calling a witness is, in a sense, responsible for his conduct. If he has been examined in chief, and fails to return on an adjourned day for cross-examination, even though the party has endeavored to obtain his attendance, still he must suffer by the loss of his testimony.''

In the case of Matthews v. Matthews, 6 N. Y. Supp. 589, the cross-examination of a witness was suspended on agreement between the parties that he should be present and recalled for further cross-examination. The witness failed to reappear when called, and it was held that his testimony should be stricken out.

The case of Dannefelser v. Weigel, 27 Mo. 45, is where the attorney for the plaintiff attended on the day and hour at the place appointed by defendant in the notice served for the taking of depositions. This attorney finding that he was obliged to leave for a little while on an errand for his sick wife requested the notary and the opposing counsel to proceed with the taking

of the deposition, but to retain the witness for an hour that he might cross-examine her on his return. This the opposing counsel and the notary agreed to do. He went away, returned within an hour, and found that the witness had given her deposition and had gone. The plaintiff's attorney promised that he would have the witness at the office at a later hour. When she did not appear the promise was renewed for two successive days, but the witness still failed to appear and never was cross-examined. The court states that no blame was attached to plaintiff's counsel for the failure of the witness to appear, and that his promise to have her present was made in good faith, but his client was responsible for the movements of the witness, and, on account of his failure to produce her, a motion to suppress the deposition should have been sustained. We are unable to find any other Missouri case which discusses this precise point.

In the general rule, stated in the New York case cited above, where the act of God prevents the cross-examination of a witness, the testimony in chief is held to be admissible. If a witness is suddenly stricken with a fatal illness before he can be cross-examined, such that it is impossible for him to testify, it may be construed as an act of God which prevents the completion of the testimony.

Mr. Bruere did not die until in June, 1906, about three months after the deposition was begun. The stipulation states that his deposition was not completed on account of his sickness, but it nowhere appears that the defendants made any effort to continue the taking of the deposition, or that the illness of the witness was so serious that it could not have been finished at some time during that three months. It will be noticed that, according to the stipulation, the immediate adjournment of the taking of the deposition was not on account of the sickness of the witness, but at the *request of the defendant* and with the consent of the parties. It was not "completed;" the defendants had not finished their examination in chief. The stipulation does not say

whether the adjournment was to a definite day, or until a time to be agreed upon, or until the convenience of defendants' counsel permitted. The plaintiff was not required to do other than wait until the defendants were ready to proceed with the taking of the deposition and finish their examination in chief, before seeking to cross-examine the witness. It certainly was no fault of plaintiff or plaintiff's counsel that the deposition was not complete. It was the duty of the defendants to have the witness present, if possible, or to make an effort to continue the taking of the deposition, and no such effort is shown. Both parties may have regarded the matter as dropped without an effort to have the deposition completed, and this view is enlivened by the fact that the notary did not certify it until more than three years after it was taken. Under these circumstances, according to the rule announced, the deposition was not admissible in evidence as a deposition, and the referee and trial court erred in receiving it in evidence on any theory.

III. Appellants, however, contend that since it was admitted in evidence, it is in the record, and the respondent cannot now be heard to take advantage of its inadmissibility, because it filed no exception in the circuit court to the action of the referee in receiving it. When it was offered in evidence the plaintiff objected, and it was admitted by the referee over plaintiff's objection. The plaintiff was not required to file an exception to the referee's final report, because that report found the facts and rendered judgment in its favor. The general result was all it desired. There would have been no propriety in its requesting the circuit court to reconstruct the theory of the referee in order to render the judgment in its favor. It is true an *appellant* cannot take advantage of an error of a referee, unless he files an exception to his report, and also presents a motion for new trial pointing out errors to the circuit court which approves the report, and

Right of
Respondent
to Object to
Incompetent
Evidence.

assigns error in this court. But a *respondent,* not appealing, is not required to take any one of such superfluous steps, because he cannot be heard to question the propriety of a judgment from which he has not appealed.

Appellants do not make the point that plaintiff waived the right to question the competency of the deposition by failing to move its suppression before the trial began, but only urge that plaintiff cannot complain now because it did not except to the referee's report. On the other hand, inasmuch as the document was not received in evidence as a deposition, but only as an admission against the plaintiff, it might be said that the notary's certification and other formalities requisite for a deposition are not before the court at all. In fact, appellants assign error to the action of the trial court in rejecting it as a deposition. However, considering only the effect of the so-called deposition as it appears in the record, the question presented is this: has the respondent a right in this court to object to its competency in its effort to sustain the judgment of the trial court?

The cases which announce the well established rule, that a party not appealing will not be heard in this court to urge a review of errors committed against such party in the trial court, are always where the respondent seeks some affirmative relief in the appellate court. A respondent cannot have the advantage of errors committed by the trial court for the purpose of modifying in any manner the judgment in his favor. But it is generally held that the respondent on appeal may attack the rulings of the trial court which are erroneous, for the purpose of sustaining his judgment. [Mendota Club v. Anderson, 101 Wis. 479; Miller v. Brooks, 120 Ga. 232; Maxwell v. Hartmann, 50 Wis. l. c. 664; Hackett v. W. U. Tel. Co., 80 Wis. l. c. 190; Landram v. Jordan, 203 U. S. l. c. 62; Philadelphia Casualty Co. v. Fechheimer, 220 Fed. 401, l. c. 418; Huntington v. Love, 106 Pac. 185; Randle v. Pacific R. R. Co., 65 Mo. 325, l. c. 334; Higgins v. Higgins, 243 Mo. l. c. 171; 4 Corpus Juris, 696; Davis v. Glenn, 3 La. Ann. 444, l. c. 446;

First Nat. Bank v. Wright, 84 Iowa, 728; Fleming v. Nor. Tissue Paper Mill, 114 N. W. 841.]

In Davis v. Glenn, 3 La. Ann., l. c. 446, the court said: "Although the appellee, by the failure to file his answer seasonably lost the right to attack the judgment for the purpose of changing it in his favor, he has a right to avail himself of the error made to his detriment by the court below as a protection against a charge asked by the appellant."

In the case of Hackett v. W. U. Tel. Co., 80 Wis. l. c. 190, the court said: "The defendant's exception in the record is available in support of the judgment in its favor."

The Federal cases, in commenting upon this proposition and considering the limited right of the appellee to have adverse and erroneous rulings reviewed, put it in this way: appellee cannot go beyond supporting the judgment—cannot attack it.

Such are a few of the cases in other jurisdictions. The question has not often been discussed by the courts, but the rule as stated seems to be general so far as the matter has come before the courts.

The question was approached in this court in the case of Randle et al. v. Pacific Railroad, 65 Mo. 325, l. c. 334, where the plaintiff appealed from a judgment in his favor for nominal damages, and on appeal the respondent urged that plaintiff was not entitled to even nominal damages, and the court held the point well taken and said: "The verdict of the jury is for many purposes undoubtedly conclusive. The defendant cannot avoid it, and indeed does not seek to avoid it. But on an appeal by the plaintiff to set the same aside, it does not preclude this court from an examination of the whole case presented here, in order to ascertain whether the plaintiffs have been injured by that verdict. Nor does it preclude the defendant from asserting against the efforts of the plaintiffs to set the same aside, that they are not wronged thereby, but on the contrary have obtained more than in strictness they were entitled to,

and that on the pleadings and evidence they were really entitled to nothing."

This case would put this State in line with the rulings in other states, but for the case of Westminster College v. Piersol, 161 Mo. 270. In that case this court held squarely that the judgment was in favor of the defendant, and as he had not appealed therefrom he is in no position to insist upon an erroneous ruling from which he does not appeal, though its effect was to uphold the judgment (l. c. 285). But in that case no authorities are cited and the principle is not discussed. An analagous ruling, consistent with the Randle case, supra, is found in Higgins v. Higgins, 243 Mo. 164, where this court held that respondent might in this court point out errors of the trial court, in order to sustain the judgment of the trial court in granting a new trial, using this language: "After some contrariety of opinion, the rule is now established in this State that on an appeal from such an order it is the duty of appellant to show that there was error in making it for *any* of the reasons assigned therefor. This, however, does not necessitate a reversal of the action of the trial court, *for it is within the rights of respondent to call attention to any other errors* than those referred to by the trial court, contained in the motion for new trial, *as a sufficient ground to sustain the ruling appealed from."*

The principle considered is the same that applies to any other appeal. The appellant must show that the order was error. The respondent may show it was correct by pointing out errors committed against him; that is, he may point out errors committed by the trial court against him, in order to sustain the judgment in his favor.

On principle, it would seem a proper duty of this court, in determining the rights of parties whose cause is presented here for consideration, to consider the matters shown by the judgment of the trial court where it was correct, notwithstanding errors committed by that court. The plaintiff in this case did its full duty

in objecting to the incompetent evidence. It could not appeal, because it had nothing to appeal from. It would have been a futile and superfluous task to present exceptions to the referee's report, file motion for new trial, and ask the trial court to reconstruct its theory of the case, because it did not seek a modification of the judgment. It simply asserts that the judgment of the trial court was right; that it was right upon the theory which the plaintiff presented to it. The plaintiff should not suffer in this court for the error committed against it there.

We hold, therefore, that the so-called deposition of Bruere was improperly admitted in evidence on any theory, and this court cannot consider it as evidence in the case.

IV. A signed statement made by A. F. Mispagel was admitted in evidence over the objection of defandants, and error is assigned to the action of the trial court in sustaining the ruling of the referee.

Admission of Cashier: Competency. The statement was obtained in this manner: Theodore C. Bruere, Jr., testified that he was one of the directors of the plaintiff bank in November, 1904. On the fifth of November an investigation of Mispagel's shortages was started, the directors instructed him to make no further entries on the books, and other persons, it seems, were put in charge of the cash and the books, although Mispagel was in and around the bank until his discharge November ninth. On November 7, 1904, while the investigation was in progress, Mr. Bruere, representing the bank, asked Mispagel for a statement explaining the discrepancies and false entries as shown by the books. Mispagel explained orally, and Bruere reduced his statement to writing; Mispagel examined it, corrected it in some particulars and signed it. Two days later, on the ninth of November, Mispagel was formally discharged.

Defendants excepted to the referee's ruling on two grounds: First, that Mispagel had ceased to perform the duties of cashier *in fact* when the statement was

made; and, second, that the statement could not be a part of the *res gestae* of his cashiership, because made to the attorney, instead of to those who managed the bank. A third objection is presented in this court to the competency of the evidence, but it was not mentioned in the exceptions to the referee's report and is unimportant. The question to be determined is whether we may apply to this case, under facts as stated, the general rule laid down in the books as follows: The admission of a servant, principal in an employee's bond, with respect to matters pertaining to the performance of his guaranteed duties, made while he is engaged in their discharge, is always competent evidence against the surety upon his bond.

There is a sharp conflict in the authorities regarding the meaning to be attached to the expression, "while engaged in the discharge of his duties." In many jurisdictions it is held that the admission, in order to be competent evidence, must be made at the very time of the particular transaction under consideration, and thus form a part of the *res gestae*. [Stetson v. City Bank of New Orleans, 2 Ohio St. 167; White v. Germ. Nat. Bank, 9 Heiskell (Tenn.), 475; Knott v. Peterson, 125 Iowa, 404; Wieder v. Union Surety & Guar. Co., 86 N. Y. S. 105; Lee v. Brown, 21 Kan. 458.] These and other cases are cited by appellants in support of their objection. They hold that, in such case, in order to make declarations of the principal admissible against his sureties, they must not be made by the defaulting officer "after the default," or refer to "past occurrences." The declarations of the principal accompanying his acts while engaged in the particular matter under consideration are admissible. The admission afterwards of what he has done before is not admissible. It is his acts, and not his admissions or declarations, by which his sureties are bound. Declarations of the principal "made subsequent to the act to which they relate" are not admissible. Such are some of the expressions used by the authorities adopting that view in explanation of the principle announced.

275 Mo.—40

On the other hand, the authorities are still more numerous which hold that the admissions and statements of the principal relating to his official duties, made while he is engaged in the discharge of such duties, *within the period covered by the undertaking of his sureties,* are admissible against them in an action on a bond. [Guarantee Co. of No. Am. v. Phenix Ins. Co., 124 Fed. 170, l. c. 174; Gilmer v. Baker, 24 W. Va. 72, l. c. 86; Treasurers of State v. Bates, 2 Bailey (S. C.), 362, l. c. 380-1; Bailey v. McAlpine, 122 Ga. 616-631; Wilson v. Greene, 60 Am. Dec. (Vt.) 279; Yates v. Thomas, 71 N. Y. S. 1113, l. c. 1117; McShane v. Howard Bank, 73 Md. 135, 10 L. R. A. 522, l. c. 557; Great Western Life Assurance Co. v. Shumway, 25 N. D. 268, l. c. 273.]

In the Phenix Insurance case, supra, on the last day of his employment, the cashier, on whose bond suit was brought, admitted he had been guilty of embezzlement in respect to four checks which were a part of the basis of the action. The statement was held admissible.

In the Gilmer case, supra, it was held that a statement made by an administrator before his official duties ceased, concerning his past transactions, were admissible against his surety.

In the Bailey case, 122 Ga., l. c. 631, it was said: "Admissions of a principal, made during the transaction of the business for which the surety is bound, become a part of the *res gestae.*"

In some of the cases it is suggested that while such admissions are competent they are not conclusive against the sureties. [McShane v. Howard Bank, 73 Md. 135.]

There is also a class of cases where an employee, principal in a bond on which suit is brought, is required by his official duties to make regular or occasional written statements or reports to his employers. Such statements and reports are always held to be part of the *res gestae* and admissible against the sureties. [United State v. Gaussen, 86 U. S. 198, l. c. 213-14;

Trustees v. Cowden, 240 Ill. 39.] In some cases where statements are made before the particular delinquency under consideration has been discovered and becomes a matter of discussion, that situation is emphasized as making them a part of *res gestae*. In many jurisdictions it is held that oral admissions made in connection with explanations of these regular statements made in the course of duty, are held admissible against the sureties. Lancashire Ins. Co. v. Callahan, 68 Minn. 277, 64 Am. St. Rep. 475, was an action on a servant's bond. When his employers examined the books and accounts of his agency while he was still the agent of the plaintiff, "his admissions accompanied such examination," and were held to be admissible against the sureties as part of the *res gestae*.

The case of Federal Surety Co. v. Ind. Mfg. Co., 176 Ind. 328, was where the treasurer of the plaintiff in a suit upon his bond made an admission to a witness concerning previous transactions, and it was held to be admissible and prima-facie evidence against the surety.

Hall v. U. S. Fidelity & Guaranty Co., 77 Minn. 24, was a suit on the bond of an employee against his sureties. Another employee was sent to complete a transaction begun by the principal in the bond. In examining the books relating to the transaction the principal in the bond made admissions which were held to be competent against his sureties. The court held that these admissions were part of the *res gestae,* and said (l. c. 27): "A part of Newton's duty was to account for the money received by him as plaintiff's agent. Defendant guaranteed Newton's fidelity in making that accounting as much as he did his fidelity in any other part of his duty as plaintiff's agent."

The case of Bank of Brighton v. Smith, 90 Am. Dec. (Mass.) 144, was an action by a bank against the sureties on the bond of its cashier. While the cashier was still filling the office he presented to the directors a written statement which purported to show the condition of the bank at a certain previous time. He made

certain verbal admissions showing that the accounting then rendered was false. These admissions were held to be properly received in evidence against the sureties.

So far as we can find, there are no late cases, determined in this State, where the question has been considered. Several early cases are cited. The case of State to use of Squire & Reed v. Bird, 22 Mo. 470, is an action on a constable's bond. Plaintiff was allowed to prove admissions made by the constable concerning the collection of a note for the proceeds of which the constable failed to account. The court held that the admission of the constable was inadmissible against the sureties and was not a part of the *res gestae*, being merely a narration of the affair.

The case of Blair v. Perpetual Ins. Co., 10 Mo. 350, was a suit upon a bond of an agent of the Insurance Company. The court, almost in the language of Green-leaf (Sec. 187), says in the opinion: "The inquiry has been whether the declarations were made, in the course of the business for the performance for which the surety was bound, so as to become a part of the *res gestae*." And then adds that statements made *after the dismissal* of the principal would not be admissible in evidence against the sureties.

The case of Cheltenham Fire-Brick Co. v. Cook, 44 Mo. 29, was an action on the bond of the treasurer and bookkeeper of the plaintiff on account of the shortage in his accounts. Admissions of the principal were under consideration and the court said (l. c. 37): "The relation of principal and surety did not exist between him [surety] and the principal of the bond at the time the admissions were made. They were not made in the progress of any business intrusted to Theodore by the defendant, and formed no part of the *res gestae*."

The case of Union Savings Association v. Edwards, 47 Mo. 445, was an action by the plaintiff against its teller upon his bond. It seems from the evidence mentioned in the opinion that the defaulting teller made two different admissions to different persons regarding the speculations by which the money was lost. One of these

statements made after he was discharged, was admitted by the trial court and this court held (l. c. 449) that the evidence was incompetent against the sureties; but further the court said (citing Greenleaf, Section 187) on the same page:

"Therefore the admissions which Edwards made to Rutherford, the president of the bank, when the default was first discovered, were competent evidence against him and his sureties because they formed a part of the *res gestae,* and were made while acting in the course of his official duty; but they would not be comnetent against the sureties *after* his official duties had ceased."

The case of Father Matthew, etc., Society v. Fitzwilliam, 12 Mo. App. 445, discussed the doctrine at some length. The suit was on the bond of Fitzwilliam as treasurer of the plaintiff, the duties of which office he performed during part of the year 1876. During part of that year he was in bad health and absent a while; a committee and a treasurer *pro tempore* was in charge in November, 1876. The plaintiff, "after many attempts, got from Fitzwilliam a statement which showed his receipts and disbursements." The Court of Appeals held the statement was competent, using this language, l. c. 449: "We think that exhibit 2 was competent. It was an accounting made by Fitzwilliam as treasurer in discharge of the duties of his office. It purports to show only the individual transactions of Fitzwilliam, without taking into account at all any receipts or disbursements of those who took his place during his absence. The constitution of the society requires the treasurer to report monthly the condition of the treasury, and to make an annual statement. This statement includes no time not covered by the bond in suit; and though it was made by Fitzwilliam after his removal for misconduct, it was made in pursuance of his duty as treasurer, during the term for which he was elected, and which was covered by the bond of defendants, and it is an express condition of their bond that

such a statement shall be made at the expiration of the treasurer's term.''

That case as approved by this court, 84 Mo. 406, is the last utterance of this court upon the subject, so far as we are able to find, and places this court squarely in line with the authorities cited above which hold that a statement made by the principal during the continuance of a term for which the sureties are bound concerning any transaction during that period is admissible. The bond in that case required him to make monthly reports and to make an accounting at the end of his term. The statement, apparently, was not a regular report required of him by his duties. It was obtained after his discharge and after repeated attempts by his principal to secure it.

In the present case the conditions of the bond were that Mispagel ''shall well and faithfully perform all the duties of such cashier either under his present appointment or under any further appointment,'' and the sureties were required to hold the bank harmless for any loss occasioned by any act of such cashier. While it is not shown that Mispagel was required to make definite, periodical reports to his employer, his duties necessarily implied that he should render an accounting to his bank or a statement of its condition whenever required to do so by the board of directors or officials of the bank, and particularly that he should fully explain its condition at the termination of his employment.

The objection that he was virtually out of office at the time he made this statement is fully answered by the Fitzwilliam case where the statement was made after the discharge but while the employee still had a duty to account. While Mispagel was brought to book by his employers on November 5th, and forbidden to make entries in the books or perform other responsible acts connected with the business, he was still the cashier of the bank. The fact that the sphere of his activities was limited by his employers' knowledge of his misconduct does not alter the fact that his duty remained to render an accounting to explain fully the

conditions of the bank as it had fared under his management.

We think, under the authorities, the evidence was properly admitted.

V. The principal defense urged against any recovery by the plaintiff is that the plaintiff knew that Mispagel had fraudulently attempted to conceal his **Knowledge of** violations of duty by making false en-**Dishonesty.** tries, by permitting overdrafts contrary to instructions; that Mispagel had fraudulently attempted to conceal his violations of duty by making false entries and that the defendants were ignorant of those breaches of duty and the plaintiff permitted them to sign the bond, fraudulently concealing from them the previous misconduct of which Mispagel was guilty. The evidence of knowledge on the part of the directors and officers of the bank that Mispagel had been guilty of misconduct, is treated by the referee as contained probably altogether in the unfinished and incompetent deposition of Theodore C. Bruere, Sr. The referee found against the contention of the defendant on that defense after admitting the deposition in evidence. His discussion of the case turns upon his theory of the law relating to such knowledge as that deposition seemed to show the officers had. Outside of that deposition the referee finds no evidence indicating that the directors and officers had any knowledge of Mispagel's dishonest practices, his false entries or concealment of the transactions by which the bank had lost money. He finds that the directors and officers of the bank were negligent in failing to keep more in touch with the business and acquaint themselves with the way things were going. For years he had been causing losses to the bank by allowing overdrafts and other dealings by which other persons had got the money of the bank. He had persistently and continuously concealed and covered up these transactions from time to time in a way which would have failed of its purpose if any great diligence had been exercised by the directors in the examination

of the bank's affairs. But the most that can be said of their conduct in this respect is carelessness and negligence; that they knew or suspected dishonesty on the part of Mispagel does not appear from the competent evidence.

Mispagel had presented bonds at various periods of his employment; the third and last one, which he presented January 2, 1904, is the one sued on here. It is not shown that the proposed sureties made any inquiries of the officers regarding Mispagel's character or capacity. He got his securities on his bond for the bank officials' approval and they approved it. If they had knowledge of Mispagel's dishonesty and retained him in office with that knowledge and accepted the bond with knowledge of dishonesty, without discovering what they knew of his character to his sureties, the sureties would not be liable on the bond. [Third Nat. Bank v. Owen, 101 Mo. 558, l. c. 582.] But as stated, the only thing that could be urged against them was that they were careless in failing to ascertain the character of the man whom they had employed as cashier. In that case the sureties cannot be excused from liability on the bond. [Hartford Fire Ins. Co. v. Casey, 191 S. W. 1072; State to use, etc. v. Atherton, 40 Mo. 209, l. c. 216-17; Farmers Bank of Deepwater v. Ogden, 192 Mo. App. 243, l. c. 247; Harrison v. Ins. Co., 8 Mo. App. 37.]

VI. The largest item showing shortages covered up by Mispagel, amounting to $18,596.10, was represented by the item of $20,000 sued on, and a credit of $1,403.90 to reduce the amount. This $20,000 was explained by Mispagel in his confession as caused by drafts drawn by one W. J. Baird, directed to the Connery Commission Company, and cashed by Mispagel in the St. Charles Savings Bank.

*Losses in Former Years.*

The statement of Mispagel identified a number of drafts of the character mentioned, dated in October and September of 1904, the most of them for $5,000, but ranging from $2300 up to $6100. These, Mispagel explained, represented cash of the St. Charles Savings

Bank, paid to Baird. The total amount of all the drafts was more than double the amount of this item; some of them were renewals of similar drafts, drawn in the same way. It seems none of them ever was paid by the party on whom they were drawn and were returned to the bank, and, as stated by Mispagel, $20,000 represents the amount lost at the bank during the year.

Appellants argue that notwithstanding the explanation of Mispagel, assuming it to be competent evidence, it is not shown that these drafts represent $20,000 taken from the assets of the bank during that year 1904, but they argue the inference is reasonable that they were used to cover up shortages which had been caused by the misconduct of Mispagel in former years. The evidence is quite positive that the money was paid out and lost during the year 1904. The referee, on the evidence, found that to be the case, and we think the evidence fully supports the finding.

VII. The four remaining items of shortage found by the referee are attacked by appellant. The first item of $504.12, called the "interest item," consists of sixty or seventy small items extending from January 2 to October 14th, showing where Mispagel would collect interest and make false entries of the amounts collected. He would collect the interest earned on different notes at different dates and enter in each case on the books a less amount, sometimes a few cents and sometimes a few dollars less, the total of all the differences between the amount collected and the amount charged being the above sum. There seems no reasonable objection to the finding of the referee that these items represent a loss to the bank in the amount mentioned, during the life of the bond.

The second and third items were represented by two drafts. As cashier of the St. Charles Savings Bank, Mispagel, on February 13, 1904, drew a draft of three thousand dollars upon the American Exchange Bank of St. Louis, payable to the order of the Beaumont National Bank. He entered this on the stub of the

draft of the St. Charles National Bank as $3.00; on February 19, 1904, he drew a draft on the American Exchange Bank of St. Louis for $800, payable to the order of Dillon & Crandall Bond & Stock Company, and entered it on the stub-book of the plaintiff bank as eight dollars. These drafts were paid by the American Exchange Bank of St. Louis a few days later. Referee found on the evidence that the amounts were lost to the plaintiff bank during the year.

The appellant excepts to this finding and assigns error here to the action of the trial court in sustaining the finding of the referee on the ground that the evidence fails to show a loss to the plaintiff bank by reason of these drafts. The plaintiff always carried a deposit with American Exchange Bank and during the period under consideration Mispagel made the books always show a larger balance with that bank than it actually had. This was true of other banks where plaintiff had deposits. These shortages varied from time to time as the exigencies of Mispagel's frauds required. The evidence shows that the shortage of the plaintiff's account with the American Exchange Bank of St. Louis was less in November 7, 1909, when the malfeasances of Mispagel were uncovered, than they were in January of that year. It is argued that, since the discrepancy between the amount the bank had on deposit with the American Exchange Bank and what the books of the plaintiff bank showed it had, was less at the time the bond was signed than when Mispagel was discharged, for that reason there could have been no shortage there.

The fact that the drafts were paid and the plaintiff's deposit in that bank thereby depleted showed a loss. If the shortages varied from time to time, either before or after the drafts were actually cashed, by replacing other shortages, or shifting the deficit from the account of one bank to that of another on plaintiff's books, that would not tend to rebut the actual proof of loss at the time the drafts were paid. Appellant claims further that it is possible that the drafts represented no loss to the bank, because they might have been sold to

customers for money which was received over the counter. Of course such a thing was possible, but there was no evidence of it.

Appellants further claim that, taking all the correspondents of the plaintiff bank, the accounts of some of them showed an increase and some a decrease in shortages during the year; but that, taken together, the accounts with correspondent banks showed less shortages at the end of the year than at the beginning, and for that reason a shifting of the accounts would not explain the decrease, and that the evidence still fails to show there was a loss during that time.

The evidence respecting these matters is not set out in full in the abstract, although the appellant asks the court to review the evidence as a case in equity. It is abbreviated and summarized, and in some instances conclusions from the testimony stated. It is sufficient to say of this point that Mispagel probably did not limit his shifting of shortages to the accounts with other banks. His acknowledged skill in camouflage could very well have enabled him to make such shortages appear and disappear from time to time in individual and other accounts in the bank. The money was actually paid on those drafts out of the plaintiff's funds at the time they were presented.

The evidence we think was entirely sufficient to justify the finding of the referee that the loss occurred as indicated.

The remaining item, $135.47 raised note, is explained by the referee at length. The appellants state that they have not presented the testimony with respect to it, therefore this court will not review the matter.

The judgment is affirmed. *Roy, C.,* concurs.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur; Faris, J., in result.