(Decided 7th June, 1892.)

---

DANIEL SCOTT *vs.* ALBERT L. McCANN, Administrator of WILLIAM E. McCANN, ALBERT L. McCANN and others.

*Death of Witness before Signing deposition—Death of Opposite party—Admissibility of Evidence of Witness who Dies before Cross-examination.*

Where a witness dies, without having signed his deposition as required by equity rule 40, the examiner shall sign it, stating the reason why the witness has not done so.

Where in an equity cause the plaintiff had testified as to his recollection of the matter in dispute—the payments made by the defendant to him—and, the defendant, having testified on his own behalf, suddenly died before the cross-examination could be had, such testimony is admissible under the statute on the

subject, which puts both parties to a contract on a plane of mutuality in cases of death of either party, and excludes the testimony of the survivor if the other party be dead, unless he shall have died after testifying in his own behalf.

APPEAL from the Circuit Court for Harford County, in Equity.

The appeal in this case was taken by the complainant. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, FOWLER, and BRISCOE, J.

*Thomas H. Robinson,* and *Robert R. Boarman,* for the appellant.

*James J. Archer,* (with whom was *Thomas C. Hopkins,* on the brief,) for the appellees.

IRVING, J., delivered the opinion of the Court.

On the nineteenth day of December, eighteen hundred and sixty-seven, William E. McCann and wife executed a mortgage to Olivia Street for a thousand dollars, payable in three years, with interest, payable annually. By a series of assignments which are set out in the bill, the complainant became the owner of the mortgage, and, the same being overdue, filed his bill for a sale of the property to pay the mortgage debt and interest. A decree was passed on the 28th of September, eighteen hundred and ninety-one, "that there is due from the defendants to the complainant the sum of one thousand dollars, with interest from the seventeenth day of December, 1889, on the mortgage, and the further sum of one hundred dollars, with interest from February 18th, 1888, and costs on the judgment;" and after limiting a day for that amount to be paid or brought in, appointing a

trustee to make sale, &c. The judgment was mentioned in the bill as resting on the property. No point arises on it. The only question in the case is whether the Court has allowed proper interest on the mortgage; and incidental to that some questions of law respecting the proof received by the Court in support of appellees' contention respecting the interest. Wm. E. McCann, the mortgagor, testified on his own behalf, and after doing so, died, without having signed his deposition and without having been cross-examined; and, in fact, without the appellant's having had the opportunity of cross-examining him, inasmuch as on close of his examination-in-chief, the examiner adjourned until further notice should be given.

The only exception, which is formally taken and embodied in the record, is, that McCann did not sign his testimony, as is required by equity rule No. 40. This rule does provide that the witness shall sign his testimony; but the rule also proceeds to say, "but if the witness, for any cause may not be able to sign the same, or shall for any reason refuse so to do, the examiner shall sign the deposition, stating the reason why the witness has not signed the same." This the examiner has done, so that the requirements of the rule, in that regard, have been complied with; and that exception, as specially taken, cannot be sustained. Another objection has been pressed in this Court to the reception of that testimony, and from a sentence in the opinion of the Court, it would seem to have been pressed in the Circuit Court, and that objection is that the testimony is imperfect, the right of cross-examination not having been enjoyed. Strictly speaking, the exception having been noted as a *special exception* and for a *special* reason, the reason now pressed may not be properly cognizable; but, as the Court below would seem to have considered, and in effect overruled, this objection we will consider it also.

In *Cazenove vs. Vaughan*, 1 *Maule & Sel.*, 4, Lord ELLEN-BOROUGH lays down the rule of the common law to be, "that no evidence shall be admitted but what is, or might be, under the examination of both parties." He adds that "it is agreeable to common sense, that what is imperfect, and, if I may so say, but half an examination, shall not be used in the same way as if it were complete." In that case the testimony was admitted notwithstanding there was no cross-examination, because the Court said the party objecting could have cross-examined if he had expressed the desire to do so, which he had not done. This without doubt is the general rule of the common law Courts. It is so laid down in *Kissam vs. Forrest*, also, 25 *Wendell*, 651; but in that case it is stated that there are cases in chancery to the contrary, but they rested on their peculiar circumstances, and were not binding on Courts of law. In the case of *Kissam vs. Forrest*, after examination-in-chief and before cross-examination, the witness had died, and that case is cited by Mr. *Greenleaf* in a note to section 445, vol. 1, but he adds, that "in equity its admissibility is in the discretion of the, Court, in view of the circumstances," and cites *Gass vs. Stinson*, 3 *Sumn.*, 104; and in section 554 of vol. 1 of his book on *Evidence*, Mr. *Greenleaf* says that while the rule *at law* is as we have stated it, "yet it seems clear that in equity a deposition is *not of course* inadmissible, because there has been no *cross*-examination and no waiver of the right." He suggests the case of the death of a witness before cross-examination as one where the testimony is receivable.

Mr. *Taylor* in his work on *Evidence*, vol. 2, section 1323, (pages 1271, 1272,) regards evidence situated as the testimony in this case admissible. He refers to the case of *Rex vs. Doolin*, where a witness for the crown, after testifying, died before cross-examination, and a majority of the Judges held that the testimony was

admissible.    That case is reported in 1 *Jebb*, (*British
Crown Cases*,) 123.    Mr. Taylor also refers to *Davies vs.
Otty*, 35 *Bevan*, 208.    In that case the plaintiff had con-
veyed real property to the defendant on a parol agree-
ment to reconvey to him if grantor was not prosecuted
for bigamy, of which he was apprehensive.    It turned
out that he was not liable to prosecution, and he filed a
bill for reconveyance.    One of plaintiff's witnesses made
affidavit on 28th of August and died on 1st September,
before cross-examination could be had.    The Master of
the Rolls overruled objection to her testimony, and said
it was admissible.    In *Abadom vs. Abadom*, 24 *Beavan*,
243, a like ruling was made by the same Master, Sir
JOHN ROMILLY.    In that case the affidavit of the wit-
ness was not filed till long after the witness had died,
which delay the Master of the Rolls censured, and said,
while he could not take the affidavit from the file as he
was asked to do, he should pay less attention to it.    The
delay in filing the affidavit, in the mind of the Master,
manifestly detracted from its credibility and reliability
as evidence.    The last authority which we shall cite in
support of our conclusion is *Gass vs. Stinson*, 3 *Sumner*,
98.    In this case Judge STORY, after discussing the
question and citing *Courtenay vs. Hoskins*, 2 *Russell*, 253;
*O'Callaghan vs. Murphy*, 2 *Sch. & Lef.*, 158; *Arundel vs.
Arundel*, 1 *Chan.*, 90, and *Nolan vs. Shannon*, 1 *Molloy*,
157, says, so that the doctrine is far from being decided
as contended for by the defendant, "and appears strongly
to lead the other way."

Thus, by strong preponderance of authority, at least,
it seems to be admissible in equity cases to receive the
testimony of a witness whose cross-examination has been
prevented, or cut off by death, where such cross-exam-
ination has not in any way been prevented by the fault
of the party producing the witness, or of the witness
himself.    In the case we are considering there is very

strong reasons for receiving the testimony objected to; because of our statute on the subject, which puts parties to a contract on a plane of mutuality in cases of death of either party, and excludes the survivor if the other party be dead or shall become insane; unless he shall have died or become insane after testifying in his own behalf. In this case the plaintiff had testified as to his recollection of the matter involved, that is to say, as to the payments made by the defendant to him; and the defendant having testified on his own behalf, suddenly died before the cross-examination could be had, so that the rule of mutuality would require the consideration of the testimony of the witness thus dying, or the striking out of the testimony given by the plaintiff. The character of the witness' testimony and reasons which he assigns for his positiveness in statement leave no ground to suppose that a cross-examination could, or would, in any way be likely to modify his testimony-in-chief, if it could have been had. By the act of God the plaintiff was deprived of a privilege, which we think would have been productive of no benefit to him.

Contrasting the statements of the two witnesses, it is very clear that in point of memory the defendant had greatly the advantage of the plaintiff. The plaintiff took no pains to remember what was paid him. He adopted no aids to his memory. He rarely credited any body with payments, and trusted wholly to the production of receipts by his debtors, and admitted no payments but those for which receipts were produced. This is his own account of himself and his manner of dealing with his debtors. In thus acting he departs from the more usual custom of business men who want to know the state of their affairs, and who ordinarily credit payments which are made, both in justice to the debtor and themselves. Debtors have a right to expect that a creditor will so act. In this case the plaintiff did not so act.

He said it was not his habit, and that he was in the habit of claiming all that receipts were not exhibited for. Not having done so, he has no aid to his memory to refresh it; and it is so frail we could not make it the basis of a computation with any assurance of being correct. He testifies that he would not have remembered that any interest had been paid if he had not found a memorandum in his pocket-book of one year's payment, which he admitted; and said that was all that had ever been paid, as far as he remembered and believed. Subsequently, and twelve days after his examination was closed, he reappears on the stand as a witness, to correct his testimony, and said that after testifying he examined Mr. Robinson's books, and found he had paid him sixty dollars in 1886, the same amount in 1889 and in 1890, and that all those payments he had forgotten. They were not all that he had forgotten. After further cross-examination after this new statement by him, two other receipts, given in 1879 and 1881 respectively, were exhibited to him, and he admitted the signature genuine, and said he had wholly forgotten them. The receipts of Mr. Robinson to Mr. McCann for the years in which the money was paid to him were subsequently proven and filed in evidence. They recite on their face for what year's interest respectively they are for.

It is not necessary to consider the question whether the agency of Mr. Robinson was such as to make the statement made by him in those receipts raise a presumption that the years preceding those named had been paid. The plaintiff testified on cross-examination, that Mr. Robinson for many years had been in the habit of receiving money for him on his mortgages and from many different people. For the purposes of this decision it is enough for us to know, as we do, that Mr. Scott adopted Mr. Robinson's acts in his behalf, and admits those payments because he finds them on Mr. Robinson's

books. The receipts make certain statements which we cannot doubt are true. The plaintiff had not seen those receipts when he testified about those payments, and the years he names corresponded with those named in the receipts. Mr. McCann testified they were all he owed. The reason which he assigns for the positiveness of his statement and recollection are so natural, and reasonable, that we cannot doubt the accuracy of his memory in that regard, and the truth of his statement. His inability to produce all the receipts given is also most plausibly explained; and their loss was probably attributable to destructive mice. We see no reason to justify a reversal, and the decree appealed from will be affirmed.

*Decree affirmed.*

(Decided 7th June, 1892.)