TERESA UPMAN et al. *vs.* JOHN THOMEY et al.

*Equity Pleading—Charge of Fraud—Confidential Relation—*
*Devisees as Plaintiffs—Limitations and Laches—*
*Prayer for Process—Amended Bill.*

While a mere charge of fraud or undue influence, unsupported by any facts, will not be recognized in a court of equity as sufficient to invoke its jurisdiction, it is sufficient if the facts be stated as facts, unaccompanied by the evidence by which they may be established.                          pp. 355-358

In a bill to set aside a deed made to defendant, a brother of plaintiffs, by their mother, since deceased, averments that she executed the deed when eighty-five years of age, entirely under defendant's influence and control, and so feeble in mind and body that she did not know what she was doing, and that she was induced to sign it by the defendant, the sole beneficiary therein, with the fixed design of frustrating her will by which she had previously left her property to all her children, *held* to specify with the requisite degree of certainty and particularity the facts from which the plaintiffs inferred the fraud charged in the bill.                          pp. 353, 358

The only distinction between voluntary conveyances from parents to children and from children to parents is that in the former case the existence of a confidential relationship between the parties is a matter to be proved, while in the latter, under certain circumstances, it may be presumed as a matter of law.
                                        p. 360

On a bill to set aside a deed made to defendant, a brother of plaintiffs, by their mother, since deceased, *held* that the facts recited in the bill were sufficient to show a confidential relationship between defendant and his mother.            p. 360

The facts being sufficient to show a confidential relationship between defendant and his mother, at the time of her execution in his favor of a deed without any consideration therefor, the burden is on defendant to show that the transaction was a

fair and proper one, and that it was the deliberate and voluntary act of the grantor; and plaintiffs need not allege or prove actual fraud or the actual exercise of undue influence, in order to set the deed aside. pp. 360, 361

Children and devisees of decedent having no legal right, title or interest in her property until her death, a bill by them, to set aside a deed by her for fraud and undue influence, is not open to attack on the ground of limitations or laches, because not filed until two months after her death; and the property being still in the hands of the original grantee, plaintiffs were not guilty of laches because they did not, during the mother's life, institute proceedings to have her adjudged *non compos mentis.* p. 361

Where the original bill and the second amended bill contained prayers for process against all the defendants, such prayers need not be repeated in subsequent amendments of the bill.
pp. 361, 362

*Decided March 5th, 1924.*

Appeal from the Circuit Court for Baltimore County (PRESTON, J.).

Bill by John Thomey and others against Teresa Upman and Edward H. Thomey, individually, and as executor. From an order overruling a demurrer to the bill, defendants appeal. Affirmed.

The cause was argued before THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*Thomas Foley Hisky* and *John Hubner Rice,* for the appellants.

*Edward T. Jones* and *Emanuel L. Rest,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.
On June 3rd, 1921, John Thomey and others, children, residuary legatees, and heirs at law of Margaret Thomey, a resident of Baltimore County, who died in April, 1921, leaving a last will which was in due course probated in the

orphans' court of that county, filed a bill of complaint in the Circuit Court for Baltimore County against Edward N. Thomey, also a son of the decedent, for the purpose of setting aside a deed from her conveying to him a tract of land on the Old Frederick Road in that county subject to a life estate in the grantor, on the ground that it had been obtained through misrepresentation and coercion. A demurrer to that bill was filed, but before it was heard the complainants, with the leave of the court, filed on September 23rd, 1921, an amended bill. To that bill the defendant and Teresa Upman, who, having originally been a party plaintiff, had through an amendment of the pleadings been made a defendant, demurred, and on April 21, 1922, those demurrers were sustained, with leave to the plaintiffs to file an amended bill, and on August 7th, 1922 a third amended bill was filed. On November 17th, 1922, a demurrer to that bill also was sustained with leave to further amend and, on December 2nd, 1922, a fourth amended bill was filed. Copies of that bill were served on each of the defendants and they were each summoned to appear to it, although it contained no prayer for process. They appeared, however, and again demurred to the bill, but the court overruled that demurrer on September 13th, 1923, and from that order the defendants appealed. The question before this Court, therefore, is whether the demurrer to what we will call the fourth amended bill of complaint should have been overruled. In dealing with that question it will be unnecessary to refer to the averments of the first three bills, since they were all included substantially in the fourth amended bill, further than to note that the first and second bills contained prayers for process against the defendants named in them, while the third and fourth bills contained none.

The fourth amended bill was filed by John Thomey and Agnes Thomey, his wife, Henry Thomey and Elizabeth Thomey, his wife, Peter Thomey, widower, Annie E. Benzel and Peter Benzel, her husband, Catherine Stigler, widow, and Mary Brown, widow. In it the complainants charge

that Margaret Thomey, late of Baltimore County, died in April, 1921, leaving to survive her as her only heirs at law eight children, to wit: "John Thomey of said county, whose wife is Agnes Thomey; Henry Thomey, also of said county, whose wife is Elizabeth Thomey; Peter Thomey, a widower, of the State of Virginia; Annie E. Benzel, of said Baltimore County, whose husband is Peter Benzel; Catherine Stigler, a widow, also of said county; and Mary Brown, a widow, of the City of Baltimore, State of Maryland, who are the above plaintiffs, and Edward N. Thomey, single, of said county, and Theresa Upman, a widow, of said City of Baltimore." That at the time of her death she was seised of a tract of land on the Old Frederick Road in Baltimore County, and that she left a last will dated May 20th, 1901, a certified copy whereof was filed with the bill, in which, after disposing of certain personal property, she devised the residuum of her estate which included the land referred to in the following manner: "All the rest and residue of my property, real, personal and mixed, I direct to be divided into nine equal parts, and I do hereby devise and bequeath one of said equal parts to and unto each of my nine children. Further I do hereby constitute and appoint my son, Edward, the executor of this my last will and testament directing *directing* him to divide and distribute my property as above set forth." And that will was on June 8th, 1921, duly admitted to probate in the Orphans' Court of Baltimore County. That subsequent to the execution of that will Frank Thomey, one of the residuary legatees, died unmarried and intestate, leaving as his only heirs at law his brothers and sisters named above, and his mother. That after the will was executed it remained in the possession of Edward N. Thomey, who alone of all the children of the testatrix knew its contents, although his brothers and sisters knew that it had been made, and it remained in his possession until the death of his mother in 1921. That Mrs. Thomey at the time of her death was about ninety-six years old, and for some fifteen or twenty years prior to her death

had been in feeble health mentally and physically, and that during that period Edward N. Thomey, one of the defendants, her son, lived with her, and to quote from the bill, "he and she being during most of that time the only occupants of the household, had assumed absolute and unlimited control over her person, affairs, business, money and property and effects of every kind, and subjected both her and them to the dominance of his own will and desires, selling the produce usufruct of her real estate, and collecting the rents and profits therefrom during all that time, without paying over or accounting to her in any way for the same." It further charges that on or about the first day of May, 1911, the defendant, Edward N. Thomey, without the direction, authority or knowledge of Margaret Thomey, his mother, caused to be prepared a deed from her conveying to himself all of her real estate, and that "by the exercise of undue influence, coercion, misrepresentation, fraud and deception by him upon and over his said aged mother, obtained her signature to and acknowledgment of said deed; and shortly thereafter caused the same to be recorded among the Land Records of Baltimore County." The bill then makes these charges :

> "That at the time of the execution of such alleged or pretended deed, the said Margaret Thomey was about eighty-five years of age; that she was unable to read, or write even her own name, as is evidenced by her mark, instead of her signature, to said pretended deed; that even though such pretended deed was read to the said Margaret Thomey at the time of its alleged execution and acknowledgment (which your orators verily believe, and therefore charge, was not then or at any other time in fact done), she was at the time mentally incapable of comprehending or understanding its meaning and purpose, and, further, that the said Margaret Thomey was at that time and for some years prior thereto had been, in such weak and enfeebled condition of mind as rendered her incompetent to transact any business or affair of importance, or to comprehend the consequence thereof.

"That the said Edward N. Thomey had, at the time of the execution of said pretended deed, and for some years before that time, been in full and absolute control and dominion of the said Margaret Thomey and her affairs and property, which dominion and control he acquired and retained by reason of the relationship of parent and child, of which relationship he availed himself for the purpose of obtaining control, in the first place, her money, the crops grown on her real estate, and other property, and which purpose he was able to effectuate by reason of said confidential relationship, and having so possessed himself of all her tangible personalty, he succeeded in increasing his control and dominion over his mother by threats and intimidation concerning that which he had thus wrongfully acquired and possessed himself of, and, further, that in order the more completely and effectually to influence, intimidate, coerce and control his said mother, he habitually used harsh and abusive words and language toward her, coupled with threats that if she did not accede to his wishes and do as he directed in respect to her property and income, he would leave and abandon her in her old age and helpless condition. And your orators charge that he carried out these latter threats to the extent that he did, in fact, leave and abandon her for a short period of time, which he spent in the Middle West, and that it was a short time after his return that he induced and misled his mother to execute, or attempt to execute, the aforesaid pretended deed of May 1st, 1911, from her to him.

"And your Orators further charge and aver that, contrary to any intention on the part of the said Margaret Thomey to grant and convey the real estate described in said pretended deed, either to the said Edward N. Thomey or to anyone whomsoever, she, because of her inability to read and write, and her ignorance of business and, particularly, legal, matters and affairs, was always under the impression, and so expressed herself repeatedly, as your orators offer to prove, that although she was entitled to the parcel of

land attempetd to be conveycd by said pretended deed from her to the said Edward N. Thomey, no deed therefor had ever been made to her, she having never been able to comprehend and understand the effect and purport of the deed of partition whereof Plaintiffs' Exhibit No. 1 is a certified copy, and she died in the belief that although she was entitled to such a deed, none had, in fact, ever been made to her.

"That the dominion and control exercised over the said Margaret Thomey by the said Edward N. Thomey, obtained, retained and continually augmented by his possession of her personal property, by his harsh treatment and threats of forsaking and deserting her in her old age and helpless condition, began some years before the alleged execution of such pretended deed to him, was never relaxed and continued in increasing degree until the time of her death.

"That your orators charge that said pretended deed was obtained from the said Margaret Thomey by the said Edward Thomey for the express purpose and with the fixed design of defeating and frustrating the terms of the aforesaid last will and testament of said Margaret Thomey, whereby the real estate owned by her at the time of her death was to go in equal shares to her surviving eight children (one of the original nine mentioned in said will, Frank Thomey, having died in the meantime intestate, unmarried and without issue).

"That none of your orators, these plaintiffs, had any knowledge or intimation of said pretended deed of May 1, 1911, from said Margaret Thomey to said Edward N. Thomey, until some time after the death of the latter, and were greatly surprised when, in the course of an inquiry into the affairs of their said deceased mother, they learned that the said Edward N. Thomey, her son and their brother, had by means and devices hereinbefore recited, secretly obtained said pretended deed granting and conveying said real estate to him, totally without any consideration whatsoever."

Upon these allegations the complainants prayed that the deed to Edward N. Thomey from Margaret Thomey, his mother, be set aside, and that they be decreed to be entitled to share in the property described in it according to their respective rights and interests.

To that bill the defendants demurred on grounds which may be thus summarized: first, that it did not state a case entitling the complainants to equitable relief; second, that the complainants' claim to relief was barred by limitations; third, that it was barred by laches; fourth, that the bill was multifarious; fifth, that it was bad for uncertainty; sixth, that it contained no prayer for process; and seventh, that it was defective for want of proper parties, and these objections we will consider in their order. The first objection, that the bill does not state a case for equitable relief may be considered in connection with the objections that its averments are too vague, contradictory and uncertain to present a case cognizable in a court of equity. The reason for these objections appears to be that the complainants do not specify with the requisite degree of certainty and particularity the facts from which they have inferred the fraud charged in their bill, but we do not think that that contention squares with the facts of the case.

Those facts in brief are, that when the deed from Mrs. Thomey to her son was executed she was about eighty-five years of age, feeble in mind and body, wholly illiterate, and entirely under the dominion, influence and control of Edward N. Thomey, to whom she conveyed all the real property which she owned, and that he had taken charge of all her other property and attended to all her affairs, and that she was, by reason of her age and infirmities, wholly dependent upon him; that when she executed the deed she did not know what she was doing, and did not even know that the title to the property was in her name or that she could convey it, and that she executed it at a time when her mind was so weak and enfeebled that she was unable to transact any business or affairs of importance or to comprehend the conse-

quence thereof, and she was induced to sign it by the grantee and sole beneficiary under it, "with the fixed design of defeating and frustrating" the terms of her will, which was then in his possession.

Certainly these facts, if true, state a ground for equitable relief. It may be stated as a general rule that a mere charge of fraud or undue influence unsupported by any facts which justify it will not be recognized in a court of equity as sufficient to invoke its jurisdiction. On the other hand, while it is necessary to set out such facts as will support the inference of fraud, it is sufficient if they be stated as facts, unaccompanied by the evidence by which they may be established.

The general rule is very clearly stated in *Miller's Equity Procedure,* par. 93, where the author says: "A general allegation of fraud, however strong in expression, is insufficient, if there is no statement of the circumstances relied on as constituting the alleged fraud. The particular acts of fraud should be pointed out and stated, although every minute detail need not be charged. * * * But to charge a defendant with fraud without stating any such facts as in contemplation of law constitute a fraud, can form no foundation for relief. There is however no rule requiring the pleader in charging fraud to set out the proof by which he expects to maintain the charge."

The same principles in somewhat different phraseology are thus expressed in 21 *C. J.* 396: "Since fraud is never presumed in equity, it must be distinctly and specifically charged in a bill seeking relief on that ground. It is not necessary, however, to allege fraud, *in totidem verbis.* If the bill states with distinctness and precision, facts and circumstances, which in themselves amount to fraud, it is quite as sufficient as if the very term itself was employed. General averments of fraud or that acts were fraudulently committed are insufficient; the specific facts and circumstances constituting the fraud must be stated, and the facts so stated must be sufficient in themselves to show that the conduct com-

plained of was fraudulent. While the specific facts constituting the fraud must be stated, it is not necessary to plead all the minutiae which may be offered in evidence in proof of such facts. All that the rule requires is that the particular character of the fraud be made known, which may sometimes be done in quite general terms."

These general principles have been recognized and applied by this Court in a number of cases, among which are the case of *Canton* v. *McGraw*, 67 Md. 585, where it was said: "There is no rule of equity pleading which requires the pleador in charging fraud, to set out the *proof* by which he expects to maintain the charge; and while the law requires the fraud to be proved by clear and satisfactory testimony, it allows a broad scope for the introduction of facts and circumstances bearing even remotely upon the question"; *Grove* v. *Rentch*, 26 Md. 377, where the Court said: "It is not necessary, however, that the fraud or mistake should be alleged *'in totidem verbis'*; the charge may be substantially made by stating the facts from which the fraud or mistake would be necessarily implied. Courts of equity derive their jurisdiction from the facts alleged, not from the terms used in setting out the fact. Pleadings in equity are not framed with the same precision and technical exactness as at law. Facts are often indirectly alleged or expressed by implication. *Bolgiano* v. *Cooke*, 19 Md. 375; *Gayle* v. *Fattle*, 14 Md. 73"; and *Dennis* v. *Dennis*, 15 Md. 124, where this language was used: "Every material fact, to which the plaintiff means to offer evidence, ought to be stated; but a general charge or statement of the matter of fact is sufficient, and it is not necessary to charge minutely all the circumstances which may conduce to prove the general charge. These circumstances are properly matters of evidence, which need not be charged in order to let them in as proof."

Nor do we find anything in the cases, cited by the appellants in support of their contention, in conflict with the principles thus stated, but on the contrary they restate and approve them. In *Kernan* v. *Carter*, 132 Md. 585, the Court,

through CHIEF JUDGE BOYD, said: "The bill is replete with charges of fraud—based on the theory that all of those transactions were with the deliberate intent to defraud the unfortunate plaintiff of what the bill asserts were her marital rights. While it is not necessary to set out in the bill all the evidence a plaintiff may have knowledge of, there must be something more than the plaintiff's conclusion as to the purpose and intent of a party, in making written instruments brought before the court, and the plaintiff calling them fraudulent or characterizing the plan as a scheme to perpetrate a fraud on a helpless lunatic does not make it so." In *Reeder* v. *Lanahan,* 111 Md. 385, the Court used the expression: "The allegation of fraudulent appropriation of the assets of the firm are too loose and indefinite to be noticed" in connection with the pleadings then before the court, and in connection with the following statment as to them: "These allegations of fraud, so far as they or any of them are inconsistent with the record which is the foundation of the suit, must be disregarded by the court. The averment that Samuel J. Lanahan failed to account for the merchandise and fixtures is shown by the record to be untrue. The accounts of the trustees very clearly show that these assets of the estate were accounted for and distributed by them." In *Boyd* v. *Shirk,* 125 Md. 178, the Court but stated the general rule when it said: "But where a complainant seeks relief on the ground of fraud he must do more than make a general charge of fraud; he must state the facts which constitute the fraud, so that the person against whom relief is sought may have a full opportunity, not only to deny or explain the facts charged, but to disprove them." Nor is there anything in its application of that rule to the facts then before it which in any way qualifies the rule which we have stated, and which in *Fried* v. *Burk,* 128 Md. 554, is stated in the following language in an opinion read by JUDGE BRISCOE: "A bill seeking relief on the ground of fraud must distinctly and specifically charge the fraud. It must state the specific facts and circumstances constituting the fraud and the facts so stated

must be sufficient in themselves to show that the conduct complained of was fraudulent. General charges of fraud or that acts were fraudulently committed are of no avail, unaccompanied by statements of specific facts amounting to fraud; and, on the other hand, if there be sufficient facts stated to disclose fraud it is unnecessary to charge in express terms that the acts complained of were fraudulent."

Applying the principles thus stated to this case, it will be seen that the facts from which the charge of fraud is inferred are stated with the most meticulous particularity. The specific fraud charged is that a son, who stood in a technical position of confidential relationship to his mother, who was wholly illiterate, and so enfeebled in mind and body that she was unable to comprehend the meaning of the transaction, and over whom he exercised a dominating control, dominion and influence, procured her to execute a deed in which she conveyed to him, for no consideration, valuable real estate, which she had in a will executed years before left to all her children equally.

That the facts are sufficient to justify the inference that the son did stand in a confidential relationship to his mother there can be no reasonable doubt.

In *Zimmerman* v. *Bitner,* 79 Md. 125, the Court, in stating the general principles applicable to that relation, said:

"A good deal has been said as to what constitutes a confidential relation within the operation of the principle, but courts have always been careful not to fetter the operation of the principle by undertaking to define its precise limits. The case of parent and child, guardian and ward, trustees and *cestui que trust,* principal and agent, are familiar instances in which the principle applies in its strictest sense. But its operation is not confined to the dealings and transactions between parties standing in these relations, but extends to all relations in which confidence is reposed, and in which dominion and influence resulting from such confidence may be exercised by one person over another. No part of the jurisdiction of the court is more useful, it has been said, than that which it

exercises in watching and controlling transactions between parties standing in a relation of confidence to each other. And being founded on the principle of correcting abuses of confidence, it ought to be applied to every case in which a confidential relation exists as a fact—where confidence is reposed on the one side, and the resulting superiority and influence on the other. *Billage* v. *Southee,* 9 Hare 534; *Tate* v. *Williamson,* L. R. 1 Eq. 528, and L. R. 2 Ch. App. 55."

The broad principle, says Vice-Chancellor Wood, on which the court acts in cases of this description, is that wherever there exists such a confidence, of whatever character that confidence may be, as enables the person in whom confidence or trust is reposed, to exert influence over the person trusting, the court will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him. *Tate* v. *Williamson,* L. R. 1 Eq. 528."

And in 12 *C. J.* 420 the rule is thus stated: "The term 'confidential relation' is a very broad one, and is not at all confined to any specific association of the parties to it. While its more frequent illustrations are between persons who are related as trustee and *cestui que trust,* guardian and ward, attorney and client, parent and child, husband and wife, it embraces partners and co-partners, principal and agent, master and servant, physician and patient, and, generally, all persons who are associated by any relation of trust and confidence."

That these principles are not affected by the consideration that the conveyance was from a parent to a child is recognized in *Kerby* v. *Kerby,* 57 Md. 350, where the Court, in dealing with a conveyance from a mother to her son, said: "By the admissions of the appellee, James P. Kerby, it is clear that he stood in that attitude and relation to Mrs. Edelen, as her general agent, which requires this deed from her to him to be scrutnized most closely, and with suspicion. It is imma-

terial whether it is to be regarded as a gift or as a deed for
valuable services rendered; the relation he bore to her was
one of such confidence and trust that the law regards the deed
as *prima facie,* tainted with undue influence and fraud, and
throws on the grantee the *onus* of showing it to be the free
and uninfluenced act of the grantor, upon full knowledge of
all the circumstances connected with it and of its contents."
The only distinction between voluntary conveyances from par-
ents to children and from children to parents is that in the
former case the existence of a confidential relationship be-
tween the parties is a matter of fact to be proved, while in
the latter, under certain circumstances, it may be presumed
as a matter of law. *Whitridge* v. *Whitridge,* 76 Md. 73;
*Burton* v. *Burton,* 17 Ann. Cas. 989, etc.; *Hawthorne* v. *Jen-
kins,* Ann. Cas. 1915D, 711, etc. In discussing the question
as to what facts would be sufficient to support a charge that
a confidential relationship existed in the former class of cases,
the court said in *Beinbrink* v. *Fox,* 121 Md. 194: "It is firmly
established as the law of this State that where an aged parent
makes a conveyance to a child, the burden is cast upon the
grantee of establishing the fairness of the transaction. And
if where confidence is reposed it is abused, courts of equity
will grant relief. *Highberger* v. *Stiffler,* 21 Md. 352; *Todd*
v. *Grove,* 33 Md. 188; *Whitridge* v. *Whitridge,* 76 Md. 54;
*Zimmerman* v. *Bitner,* 79 Md. 115; *Berger* v. *Bullock,* 85
Md. 441; *Reck* v. *Reck,* 110 Md. 497." While the rule thus
stated was predicated upon the facts of that particular case, in
*Thiede* v. *Startsman,* 113 Md. 278, the court applied the
general principles stated above to a conveyance from a mother
to a son and a son-in-law, where it was shown that the son
stood in a position of confidential relationship to the mother.

If the facts referred to are sufficient to show that in this
case the grantee stood in a position of confidential relation-
ship to his mother, and in our opinion they are sufficient for
that purpose, then the burden was cast upon the grantee to
show that the transaction was a fair and proper one, and that
the deed was the deliberate and voluntary act of the grantor.

*Bentley* v. *Bentley,* 141 Md. 437; *Chase* v. *Grey,* 134 Md. 625. And it is not necessary for the complainants to allege or to prove actual fraud or the actual exercise of undue influence in order to set the deed aside. *Highberger* v. *Stiffler,* 21 Md. 350; *Todd* v. *Grove,* 33 Md. 188. Without prolonging the discussion of this branch of the case it is sufficient to say that in our opinion the facts stated in the bill, if true, do present a case for equitable relief.

In dealing with the questions of limitations and laches raised by the demurrer, it is sufficient to say that the bill in this case was filed in June, 1921, apparently within two months after the death of the grantor, and that until her death the complainants had no legal right, title or interest in the property, and could not have maintained such a suit as this. *Sellman* v. *Sellman,* 63 Md. 520; and that the contention that the appellees were guilty of laches because they did not, during her lifetime, institute proceedings to have their mother adjudged *non compos mentis,* in view of the fact that the property is still in the hands of the original grantee, is without substantial merit.

The next ground of objection is that the fourth amended bill contains no prayer for process. It is certainly true that an original bill which contains no prayer for process is defective for "none are parties, although named in the bill against whom process is not prayed." *Miller's Equity Procedure,* par. 91. But there is no reason why that rule should extend to an amended bill where the defendants have been regularly brought in under subpoena issued in answer to a prayer for process contained in the original bill. For the amended bill is regarded as but a continuation of the original bill and together they constitute but one record, and the prayers and averments of both will be considered together. 21 *C. J.* 532. And where, as in this case, the original and the second amended bills contained prayers for process against all the defendants, there is no good reason why those prayers should be repeated in subsequent amendments of the bill, since as they are already in court it is sufficient if the

defendants be notified of the nature, character and substance of the amendment by the service of a copy thereof, as was done in this case. It is said in *Beach's Modern Equity Practice* (ed. 1894), par. 154, that "upon a mere amendment of the complainant's bill, no new subpoena is necessary except to bring in new defendants who are made parties by the amendment." And in a note to paragraph 168 in the same book it is said: "Objection that no ticket was issued with the subpoena cannot be taken by demurrer. *Ludington* v. *Elizabeth,* 32 N. J. Eq. 159. Where an amendment to a bill introduces no new facts, and does not in any respect affect the merits of the case, it is not necessary to issue and serve a new subpoena to answer the amended bill. *Longworth* v. *Taylor,* 1 McLean, 514; *Angerstein* v. *Clark,* 1 Ves. Jr. 250. By appearing generally one waives his right to object that he is not named as a defendant in the prayer for a subpoena. *Buerk* v. *Imhaeuser,* 8 Fed. Rep. 457." Further discussing the same subject the author, in paragraph 198, says: "It was held in the New York court of chancery that where the complainant amends his bill after a personal service of a subpoena upon the defendant, who neglects to appear in the suit, the service of a new subpoena is not necessary to authorize the entry of an order to take the amended bill as confessed. Such an order applies to the bill as it then stands, including amendments that have been made; and where the complainant amends his bill after answer, if a further answer to the amended bill is not waived, the defendant must put in a further answer to the amendments, or the complainant will be entitled to an order taking the whole bill as amended confessed." But a conclusive answer to the objection is furnished by Rule 22 of the *General Equity Rules,* which provides that: "In every case where an amendment to the bill shall be made after answer filed, a written notice of such amendment, or a copy thereof, shall be served upon the defendant or his solicitor of record, and the defendant shall, if so ordered by the court, put in a new or supplemental answer within such time as the court may

allow; and upon a default, the like proceedings may be had as upon an omission to put in an answer"; and which makes another notice unnecessary.

With respect to the remaining objections to the bill presented by the demurrer, it is sufficient to say that we have examined the fourth amended bill very carefully in connection with them, and that in our opinion it is not subject to the criticisms which they convey.

For the reasons assigned it follows that the order of the lower court overruling the defendants' demurrer to the complainants' fourth amended bill of complaint must be affirmed.

> *Order affirmed, with costs to the appellees, and case remanded for further procedings.*