HENKEL *v.* ALEXANDER, COMMITTEE

[No. 3, October Term, 1951.]

312

*Decided October 31, 1951.*

*Rehearing denied December 5, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Hyman Ginsberg,* with whom were *Ginsberg and Ginsberg* on the brief, for appellant.

*Walter V. Harrison* for appellee.

MARBURY, C. J., delivered the opinion of the Court.

Abraham M. Zimmers, a man in his early eighties, made and executed, on May 4, 1950, a deed to Christina L. Caprarola, and Christina L. Caprarola, on the same

day, made and executed a deed to Zimmers and Lucinda D. Henkel, the appellant, as joint tenants. The property conveyed by these deeds was 1412 Hollins Street in the city of Baltimore, and had been conveyed to Zimmers and his wife, as tenants by the entireties, on December 16, 1931. The deed recited that Mrs. Zimmers died in August, 1936. Mr. Zimmers had continued, after his wife's death, to make his home in this property.

In the latter part of 1950, Zimmers was declared incompetent by a decree of the Circuit Court of Baltimore City, and Eugene A. Alexander, III, was appointed committee of his personal estate. On December 28, 1950, the committee filed a bill of complaint in the Circuit Court of Baltimore City against Lucinda D. Henkel to set aside the two deeds above mentioned, alleging that at the time of their execution, Zimmers' mind was impaired, and he was wholly incapable of making a valid deed, and that during the continuance of that infirmity, he had been induced by Miss Henkel to have the deeds executed which gave her an interest in joint tenancy in the property. Miss Henkel filed an answer, alleging that Zimmers was wholly capable of making a valid deed on May 4, 1950, and denying that she induced him to execute any deed during any imbecility or incapacity on his part, and stating that the deeds in question were executed by him in accordance with his fixed and declared intention of many years standing. After the taking of testimony, the chancellor found that Zimmers was not in a mental condition to execute a valid deed on May 4, 1950, and he set aside the two deeds and declared them to be utterly null and void to all intents and purposes whatsoever, so far as they might interfere with the claim of the committee to the real property mentioned. From this decree Miss Henkel appealed.

It appears from the testimony that this property was the home of Zimmers and his wife, that they had no children, and that Miss Henkel was the niece of Mrs. Zimmers. Her uncle, brother of her father, testified that from the time Lucinda was four or five years old,

he would take her to the Zimmers to stay over the week-end, and that they were very devoted to her. He said that relationship continued through all the years, and he had heard Mr. Zimmers and his wife say often that everything they possessed would eventually belong to Lucinda. There was also testimony in the case that after Mrs. Zimmers' death, Lucinda Henkel visited Zimmers at frequent intervals, caused medical and hospital attention to be furnished him, and brought him delicacies from time to time. She was a schoolteacher, and, when he was sick, she would go to his home after school and try to get proper food for him. His home was apparently in a filthy condition, there was no one to clean it up or look after it, and she tried to get him to come to her house to live, but he refused. Miss Henkel, however, did not testify in her own behalf, but was called by the committee to prove her signature to a petition she filed in the lunacy proceedings to have herself appointed as the committee. She did not, in any of her testimony, state anything about Zimmers' mental condition. In the petition she filed in the lunacy case, she alleged that he owed her $250.00, that he had about $134.00 in various savings accounts, and a paid-up life insurance policy of $129.00, and that she believed he was "probably now incompetent because of the infirmities mentioned in the petition instituting these proceedings filed on November 6, 1950" by his half-brother. She requested the court, on account of her rights, and the danger that they might be prejudiced, to appoint her as committee, stating that she has a greater interest than any person in the person and estate of the incompetent.

The testimony of Dr. Hyman Schiff, who was one of the two physicians who certified that Zimmers was incompetent on October 27, 1950, stated that he had seen Zimmers about a month before and had taken him to the Baltimore City Hospital because he was affected with shortness of breath. He said that at that time his opinion was that he was not able to take care of himself, either physically or mentally. The certificate that Dr. Schiff

filed in October, 1950, stated that Zimmers was incompetent by reason of a mental disability, suffering from senile arteriosclerosis. The other doctor who certified in October was Dr. Samuel Legum. He said that, in October, Zimmers was not capable of executing a vaild deed, that with the hardening of the arteries which he had, he could not conceive that he was much different five months previously, and that five or six months prior to October 31, or even a year before, it was his opinion that Zimmers was very likely incompetent from a mental standpoint. Another doctor (Dr. Nathan Racusin) who saw him in the latter part of 1949, and during the months of April and May, 1950, found him suffering from shortness of breath, and swelling of his feet, legs and ankles. The examination made at that time disclosed him to have high blood pressure, hardening of the arteries, and arteriosclerotic heart disease, which the doctor said was a form of degenerative heart disease frequently encountered in elderly individuals. Dr. Racusin, however, said that at the times he saw him, he seemed normal mentally to him. Dr. Esther L. Richards, associate professor of psychiatry at Johns Hopkins University, in charge of the out patient department of Phipps Clinic and psychiatric consultant of the Baltimore City Hospitals, examined Zimmers on November 2, 1950. She said the hospital history showed that he was first admitted to the hospital on May 13, 1950, with cardiac failure and senile emphysema, and was operated on for hernia. He was admitted the second time on August 9, 1950, because of shortness of breath and swelling of the feet and ankles. His blood pressure was 246 over 118. He was admitted the third time on September 10 for the same complaints for which he was admitted in August. The diagnosis was hypertensive, arteriosclerotic cardiovascular disease with enlargement of the heart, senile emphysema. The witness said that the condition of general cerebral arteriosclerosis had been existing for some time, that hardening of the arteries is slow and gradual in onset, and it was her opinion that, in May, 1950, he was suffering

from senile degeneration, and from the nature of his disease, and from her observations when she examined him, he could not have executed a valid deed or contract in May, 1950.

We have had many cases before us in the past few years of elderly people who have conveyed their property to others, either in pursuance of contracts to take care of them, or in order to insure that the property will belong to favorite relatives after the deaths of the grantors. The first question arising in these cases is always whether the grantor has the mental capacity necessary to execute a valid deed. If it is found that he or she has not such competency, then, of course, the conveyance must be set aside, no matter what the relationship of the grantee is to the grantor. On the other hand, if the grantor was competent when he or she executed the conveyance in question, it will be upheld unless it is shown that it was not made by the free will of the grantor.

On the primary question of the mental capacity of Zimmers on May 4, 1950, we have, in addition to the medical testimony, evidence given by the president of the Carrollton Bank, who was also a Notary and who went with the scrivener to take Zimmers' acknowledgment. He had known Zimmers for ten or twelve years previously, and said that when the latter executed the deed, he was not any different from any other time when the witness had known him, that there appeared to be nothing to indicate that he was not capable of performing a rational act, and there was nothing about Zimmers which would cause the witness to hesitate to do business with him. The lawyer who drew the deed testified that he prepared the papers in his office at the request of Miss Henkel, although she was not present at the signing. He had previously known Zimmers. He and the president of the bank went to Zimmers' home, and explained to Zimmers very thoroughly what were the papers, and the latter said that was what he wanted, and then the deed was executed. He said there was no doubt in his

mind that Zimmers was a perfectly free agent, and that what was done was what he wanted. The interview only took about fifteen minutes.

Where the question of the mental capacity of anyone on a certain date is the issue, evidence of physicians, who saw the patient at a later date is admissible, if they state that the mental disease from which he is suffering at the later date, was, in their opinion, affecting him at the earlier date, so that he could not then execute a valid deed. But it has been also stated in the decisions so holding that such evidence is not legally sufficient to establish the fact of mental incapacity at the earlier date. *Kelley v. Stanton,* 141 Md. 380, 384, 118 A. 863, will case; *Belote v. Brown,* 193 Md. 114, 121-123, 65 A. 2d 910, 913; *Grant v. Curtin,* 194 Md. 363, 384-386, 71 A. 2d 304, 314; *Morton v. Thomas,* 197 Md. 623, 628, 80 A. 2d 901, 904. Here we have the testimony of three physicians who never saw Zimmers until six months after the deeds were executed. The only physician who saw him about that time said he appeared normal, and so did the lawyer and the bank president notary who were present at the time. Under these circumstances, we cannot agree with the chancellor that there was sufficient evidence to find that Zimmers lacked mental capacity to execute his deed which is here questioned.

This conclusion leads us to the second contention which is that the grantee improperly induced the grantor to make the deed. This was not decided by the Chancellor. It is well settled that mere old age is not sufficient to invalidate a deed or will from a parent, or one in *loco parentis,* to a child, although it is a fact to be considered in determining whether undue influence or persuasion was exercised. *Mead v. Gilbert,* 170 Md. 592, 605, 185 A. 668. *Hoffman v. Rickell,* 191 Md. 591, 598, 62 A. 2d 597. And it has also been held that "when a competent person, in pursuance of a long cherished purpose, makes a voluntary gift to a favorite relative, whom he has raised from childhood, and with whom he has lived on intimate and affectionate terms, there is no

presumption that the donee exerted undue influence, and the court should not set such a deed aside; except upon strong and conclusive proof." *Williams v. Robinson,* 183 Md. 117, 120, 36 A. 2d 547, 549. On the other hand, where the grantee is in a dominant position, the burden shifts, and the grantee must show that the transaction is fair and reasonable in all respects. *Upman v. Thomey,* 145 Md. 347, 359, 125 A. 860.

In this case, there is some testimony that both Zimmers and his wife, who were childless, were devoted to the appellant, treated her as if she were their child, and said repeatedly that everything they had would go to her. If this was their intention, the deeds in question would carry it out. The testimony relied on by appellee consists of the evidence of a neighbor named Thomas who had know Zimmers since 1947, and saw him quite frequently until 1950. He said that on many occasions, Zimmers discussed Miss Henkel and seemed to think that she was trying to do him out of his property. Two or three times or more he had said that she kept "agitating" him all the time, but the witness did not know just what he meant. The witness also said that Zimmers told him that if anything happened to him, he wanted his brother, Harry, to have the property. He also testified that Zimmers did not keep his house clean, he just existed there, and lived like a tramp. There was some lady who lived on the second floor who helped him out, but he did not want any help from anyone, and wanted to be alone all the time. He also said that Zimmers told him he signed his niece's name on the deed in one of his weak moments. There was also testimony from a Mrs. Saville who had known Mr. Zimmers for about twenty years. She started to go to see him right after he lost his wife. She said that Zimmers talked to her confidentially, and would say: "Lucinda was here again last night," and "As usual the same thing, she wants this property." He said he would not sign it over to her, that she was only an in-law, his brother was the nearest relative, and when he was asked why he did not make a

will, he said: "What's the use? My brother is the legal heir, and he will get everything." The same witness also said that he complained that Lucinda was such a drag on him ever since he was married. He said he had educated her and raised her, and what grieved him most was to be treated the way she was now treating him. He said she stole from him and "she took everything", his watch, chain, and even a little pot of candy, cuff buttons, and a bag of pennies. On a later occasion, he said they forced him to sign a deed and he did not spell his name right on the deed, and he did that purposely. He said he was "sick of the Henkels". He said that Lucinda brought a lawyer and forced him to sign the deed.

This testimony does not justify the conclusion that there was undue influence exercised upon Zimmers, but it is not denied by the appellant, and this lack of contradiction must be taken into consideration when we determine whether the transaction was fair and reasonable. Miss Henkel was in possession of more knowledge about Zimmers' affairs than anyone else. She was looking after him, and she got the lawyer who was to draw the deeds. We think she was in a confidential relation to him and this places upon her the duty of showing that the conveyances were fair under all the circumstances. We do not think she has met that burden.

There is no consideration for the deeds, they constitute a pure gift, and Zimmers thereby stripped himself of half of all he had to care for him in his old age. We cannot hold such a transaction to be fair and reasonable. The decree, therefore, must be affirmed.

*Decree affirmed with costs.*