MELEY, EXECUTOR ET AL. *v.* DECOURSEY ET VIR.
[No. 6, October Term, 1954 (Adv.).]

*Decided June 22, 1954.*

650

Motion for rehearing filed July 22, 1954, denied July 26, 1954.

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ.

*Sidney Kaplan* for the appellants.

*Herbert L. Grymes* for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree denying the substantial part of the relief prayed in appellants' bill of complaint.

On July 28, 1953, George H. Meley filed a bill of complaint asking, among other things, that a deed executed by him on November 28, 1949, to Edward W. DeCoursey and Katherine Julia DeCoursey, his wife, of the property at 3101 Glendale Avenue in Baltimore be canceled and annulled; that the appellees be enjoined from conveying

or encumbering said property; and that he be declared to be the owner. He also asked that the household furniture and effects in said house be declared to be his property. On December 14, 1953, a suggestion of the death of George H. Meley and that the proceedings be amended, was filed by the appellees. As the result of a petition filed by Henry Edward Meley, Executor of the Estate of George H. Meley, deceased, and Henry Edward Meley and Caroline Meley, his wife, as devisees of George H. Meley, appellants, they were made parties plaintiff in the place and stead of George H. Meley, deceased. After a hearing in open court before the chancellor a decree was signed on January 15, 1954, denying the relief prayed, except that the furniture was declared the property of the Executor of the Estate of George H. Meley. From that decree the appellants appeal.

The appellants contend primarily that a confidential relationship existed between George H. Meley and the appellees. For the purposes of this case the testimony follows. George H. Meley was a man of meager education, having attended school only partly through the second elementary grade. In 1917 he married Elizabeth Meley, who was his second wife. He had two children by his first marriage, namely Katherine Julia DeCoursey, one of the appellees, and Henry Edward Meley, one of the appellants. Elizabeth Meley had two children by a previous marriage, namely, Katherine Hyson and William Twupack. On July 16, 1935, George and Elizabeth Meley purchased as tenants by the entireties the property now in dispute, known as 3101 Glendale Avenue, into which the family moved and lived. Shortly before September, 1948, Elizabeth Meley was taken to the hospital for an operation. At that time it was discovered that she had cancer. George Meley called a family conference of his two children and his wife's two children to decide what should be done under the circumstances. At that conference it was agreed that Katherine DeCoursey, with her family, should move into the home at 3101 Glendale Avenue and pay $30.00 a month as rent.

The DeCourseys moved there in August, 1948. Elizabeth Meley died on September 17, 1948, thirty years after her second marriage. The Meleys had lived a happy married life. He had become dependent upon his wife to a large extent and was greatly affected by her death.

After Elizabeth's death the DeCourseys continued to live in the house, George Meley living with them and paying one-third of the cost of the food. Katherine Hyson testified that the DeCourseys agreed to take care of George Meley for the rest of his life. On November 27, 1948, the name of Katherine Julia De-Coursey was placed on her father's bankbook as joint owner with him, subject to the order of either, replacing the name of his deceased wife. At that time the balance in that account was $10.00. On September 26, 1949, George Meley gave to the appellees a receipt for $3,000.00 as part payment on the Glendale Avenue property. On October 3, 1949, the appellees applied to the Acacia Mutual Life Insurance Company for a mortgage loan of $5,000.00 on this property. On November 28, 1949, at the office of the Title Guarantee Company in Baltimore, George Meley conveyed the Glendale Avenue property to the appellees as tenants by the entireties. At the same time they executed a mortgage to the Acacia Mutual Life Insurance Company for $5,000.00. The settlement sheet shows the purchase price to be $8,000.00, with $3,000.00 paid on account, which apparently was the $3,000.00 for which George Meley gave a receipt to the appellees on September 26, 1949. The $5,000.00 from the mortgage was credited to George Meley and, after deducting liens on the property, a balance of $1,793.96 was paid him. This settlement sheet contained his signature. Edward W. DeCoursey admitted that the $3,000.00, for which he and his wife held a receipt from George Meley, had not been paid to him because he had not asked that it be paid. Robert Piazza, a barber, testified that three or four years before January, 1954, George Meley's step-son, apparently William Twupack, brought him to his barber shop. At that time George

Meley told him he had sold his property to his daughter and son-in-law for $5,000.00. When asked why he did this, he said: "I sold it, I wanted to give the kids a break. * * * I sold it so I'll have a home as long as I live." The barber said at that time he knew George Meley very well and talked to him quite frequently. He looked to be in perfect health although the barber thought he had a heart condition.

With the money George Meley received from the house, he purchased a truck which he later traded in for a used automobile. From August 1948 until February 1953 he lived in the home with the DeCourseys. He was a carpenter by trade and did carpentry jobs. In 1951 and 1952 he was employed at St. Timothy's School in Baltimore County. On January 12, 1953, George Meley was taken by Katherine DeCoursey to the Johns Hopkins Hospital where it was found that he had heart trouble. It was further found that: "This patient is definitely somewhat disoriented but at times he seems to realize some of the surrounding conditions, and he states he would like very much to be placed in a nursing home. He is able to realize his mind has slipped, and is willing to accept it." Apparently his ailments at that time were more physical than mental. Katherine DeCoursey advised the doctors that she could not manage her father. Henry Meley, one of the appellants, was notified on February 6, 1953, by a social worker that his father should go to a nursing home. On February 18, 1953, two doctors of the Johns Hopkins Hospital committed George Meley to Springfield State Hospital. On April 27, 1953, Domestic Information Warrants were issued for Henry Meley and Katherine DeCoursey for non-support of their father. On May 7, 1953, both parties were dismissed on agreeing to pay $4.75 each month toward his support. His old age pension check in the amount of $40.50 was also so applied. After George was treated at Springfield Hospital for about three months, Henry Meley took his father to Henry's home. On June 19, 1953, George Meley executed a last will and

testament in which he left to Katherine Julia DeCoursey "the sum of One ($1.00) Dollar, having amply provided for her during the course of my life." He also provided that: "The respective debts owed to me by my step-daughter, Katherine Hyson, and my stepson, William Tupek, are to be either paid or marked satisfied, in any manner in which my beloved son, Henry Edward, personally desires." All the rest and residue of his estate he devised and bequeathed to his son, Henry Edward Meley, and Caroline Meley, his wife, as tenants by the entireties absolutely. He also appointed Henry executor of this estate. On July 28, 1953, almost four years after the conveyance, he filed the bill of complaint in this case.

On September 29, 1953, a petition was filed to perpetuate the testimony of George Meley, who was alleged to be critically ill. An order was passed authorizing the taking of the deposition on October 2, 1953. On that date the deposition was taken at the home of the appellants. During the cross-examination of George Meley by the solicitor for appellees, he became "very upset". Mrs. Caroline Meley came into the room and said: "He can't carry on, he can't answer any more questions." The taking of the deposition was then stopped. A tentative date of October 30, 1953, was set to complete any additional testimony but death occurred on October 23rd. The appellees later filed a petition to expunge the deposition of George Meley, alleging that they were requested to waive the provision of Depositions, Rule 9, General Rules of Practice and Procedure of the Court of Appeals, which required the signing by the witness. They refused to so waive. They also alleged that, before the cross-examination had been completed, the taking of the testimony was stopped by Caroline Meley, one of the appellants. Because of this interruption the appellees were not permitted to continue such cross-examination. The chancellor refused to admit the deposition or portions thereof in evidence in the case and appellants assign this as error. It appears that

in equity the admissibility of such a deposition, where cross-examination is not completed, is in the discretion of the court in view of the circumstances of the particular case and is not necessarily inadmissible. *Scott v. McCann,* 76 Md. 47, 24 A. 536. In that case many of the English and American authorities were reviewed, including *Carzenove v. Vaughan,* 1 M. & S. 4, and *Kissam v. Forrest,* 25 Wend. 651, and it was there said: "Thus, by strong preponderance of authority, at least, it seems to be admissible in equity cases to receive the testimony of a witness whose cross-examination has been prevented, or cut off by death, where such cross-examination has not in any way been prevented by the fault of the party producing the witness, or of the witness himself." *People v. Cole,* 43 N. Y. 508; *Pringle v. Pringle,* 59 Pa. 281, 290; *State v. Bigham, S. C.,* 131 S. E. 603. This is peculiarly a case in which cross-examination could have been most helpful to the appellees. Caroline Meley, the person who stopped the cross-examination, is one of the beneficiaries under the will of George Meley and had an interest in the subject matter of the case. If she and her husband had been successful in annulling the deed, the property would have passed to them under the will. We must therefore conclude that the chancellor did not abuse his discretion in refusing to admit this deposition in evidence. *Schneider v. Hawkins,* 179 Md. 21, 25, 26, 16 A. 2d 861.

The doctrine of constructive fraud has been adopted to protect the grantor in a confidential or fiduciary relationship, not against his own voluntary and deliberate judgment which may have resulted from resentment, favoritism or whim, but against overweening confidence and precipitate judgment. *Myers v. Myers,* 185 Md. 210, 44 A. 2d 455. Where such a confidential relationship exists, the courts will not allow a transaction to stand unless there is a full and fair explanation of the whole transaction. *Green v. Michael,* 183 Md. 76, 36 A. 2d 923. Where, on account of old age and feebleness, a parent relies heavily upon the child for care and pro-

tection or for guidance in his business affairs, the child then becomes the dominant party. If, under such circumstances, he makes a gift to the child, it will be held void unless it is shown by the grantee to the satisfaction of the court that it was the free and voluntary act of the grantor and the transaction was a fair and proper one. *Upman v. Thomey,* 145 Md. 347, 125 A. 860; *Mead v. Gilbert,* 170 Md. 592, 185 A. 668; *Gerson v. Gerson,* 179 Md. 171, 20 A. 2d 567; *Gaggers v. Gibson,* 180 Md. 609, 26 A. 2d 395; *Williams v. Robinson,* 183 Md. 117, 36 A. 2d 547; *Grimes v. Grimes,* 184 Md. 59, 40 A. 2d 58; *Myers v. Myers, supra.* Every person of sound mind has the right to dispose of his property in any way he desires, not inconsistent with the law. It was said in *Williams v. Robinson, supra,* at page 120: "It is definitely held in Maryland that when a competent person, in pursuance of a long cherished purpose, makes a voluntary gift to a favorite relative, whom he has raised from childhood and with whom he has lived on intimate and affectionate terms, there is no presumption that the donee exerted undue influence, and the court should not set such a deed aside except upon strong and conclusive proof. *Eakle v. Reynolds,* 54 Md. 305, 311." It has not been here shown that at the time of the conveyance the grantor was not of sound mind. Members of the family other than the appellees knew of this transfer. There is no evidence that he relied upon the appellees for care and protection or for guidance in his business affairs. In fact there was testimony by a person who lived in the house from July 1947 until December 1947 that George Meley was very domineering and stubborn. Edward Hyson, the husband of the step-daughter, testified that George Meley drove a truck and automobile and after he became accustomed to being by himself, he got around, mixed with people, and took an interest in life. He also testified that George Meley was a "rugged" individual and when the family conference was held in September 1948, about a year before the property was deeded, George Meley told him not to come into the con-

ference, that it was a family affair. Katherine Hyson, the step-daughter, testified that in 1948 she and her husband borrowed $1,000.00 from George Meley. She also testified that for about eight months in 1953 George Meley spent the days at her home, sleeping at the DeCoursey home. This indicates that he was not dependent on Katherine DeCoursey. The conveyance here was not a gift of the property, but a sale. There is no evidence as to the value of the property conveyed. The chancellor concluded that the $8,000.00 figure was arrived at in order to get the $5,000.00 loan from the insurance company, and that it was never intended that the $3,000.00 should be paid by the appellees. The testimony of the barber, Robert Piazza, a disinterested witness, that George Meley told him he had sold his property to his daughter and son-in-law for $5,000.00 is very convincing. We cannot say from the evidence in this case that the chancellor was clearly wrong in finding that a confidential relationship did not exist between George Meley and the appellees, and that George intended to let the appellees have the property for $5,000.00 provided they took care of him for the rest of his life. He did receive the difference between the $5,000.00 and the amount of liens on the property. From the testimony he lived with the appellees for over four years after the property was deeded and, according to the testimony of six disinterested witnesses, he was well treated there. He lived with the appellants, who now seek this property, for only six months before his death. As was said in *Myers v. Myers, supra*: "* * * when a person voluntarily conveys property by deed valid and absolute on its face and duly recorded, without fraud, undue influence, or imposition exerted upon him, the Court has no authority to nullify the deed merely because he later changed his mind and regretted the conveyance. *Allen v. Safe Deposit & Trust Co.*, 177 Md. 26, 7 A. 2d 180; *Williams v. Robinson*, 183 Md. 117, 36 A. 2d 547, 550." The decree will be affirmed.

*Decree affirmed, with costs.*